Bart ROSS, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–98–00497–CR.

Court of Appeals of Texas, Austin.

Jan. 6, 2000.

---

David A. Schulman, Schulman & Krug, Austin, for Appellant.

Lisa Dotin Stewart, Asst. Dist. Atty., Austin, for Appellee.

Before Justices JONES, KIDD and PATTERSON.

J. WOODFIN JONES, Justice.

Bart Ross, appellant, was convicted on two counts of engaging in organized criminal activity for an aggravated assault committed by appellant and two co-defendants. *See* Tex. Penal Code Ann. § 71.02 (West Supp.2000). On appeal, appellant complains that (1) the evidence is legally and factually insufficient to support his conviction because his actions did not come within the statutory requirements of an orga-

nized criminal activity, (2) the trial court improperly refused to submit a requested instruction to the jury, and (3) the trial court erred in denying his motion for new trial. We will reverse the convictions for organized criminal activity, render judgment that appellant is guilty of the lesser-included offense of aggravated assault, and remand the cause to the trial court for a new sentencing hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

About midnight on February 9, 1997, Tonya Hancock left Georgetown with two friends, heading south on Interstate 35 (I–35) in Hancock's Chevrolet Blazer. The three planned to drive downtown and spend the rest of the evening on Austin's Sixth Street. Also driving south on I–35, caravan fashion, were appellant, who was driving his Camaro, and Robin Saunders and Bryan Ross, who were in Bryan's Chevrolet pickup.[1] Bryan Ross and appellant are brothers. Somewhere south of Georgetown, Hancock changed lanes and inadvertently cut off appellant's Camaro. She quickly switched back into her original lane, gestured an apology, and continued on her way.

Apparently angered by her actions, the passenger in the truck "mooned" Hancock, and obscenities were exchanged between the passengers in the truck and Hancock's passengers. The Camaro and the pickup then commenced a high-speed game of cat-and-mouse with Hancock on the interstate. The truck pulled in front of Hancock, and the Camaro moved to the right of her. Boxing her in, they worked in tandem to try to steer her into the cement median on the highway. If Hancock sped up, the other cars pursued her. If she slowed down, they followed suit. At one point, they slowed so much that Hancock was forced to come to a complete stop in the left-hand lane of I–35. Getting out of their vehicles, the Ross brothers threw beer bottles or cans at Hancock's Blazer.

Frightened by the assault and worried about being rear-ended by other traffic on the interstate, Hancock drove in reverse and attempted to get around and away from the other two vehicles. They followed, however, and the chase continued. Finally, Hancock exited I–35 and turned on to the frontage road of Highway 290. When she came to a red light, she drove across a grass median to escape her pursuers. On the other side of the median she came to another red light and was unable to get around the other cars stopped in front of her at the light.

Appellant, Bryan Ross, and Saunders quickly arrived. They climbed out of their respective vehicles and approached the Blazer.[2] A beer can was hurled at the passenger-side window, shattering the glass. The other two passengers in the Blazer managed to lock their doors, but Hancock was unable to lock the driver's door before one of the assailants opened it. The three of them proceeded to beat Hancock, hitting her repeatedly in the face, until they were challenged by a bystander.

Appellant climbed into his Camaro and fled. Saunders and Bryan Ross tried to drive off in the pickup truck, ran a red light, and collided with another car as they left the scene. Oddly, they then returned to the scene and tried to blend in with the bystanders gathered around Hancock's Blazer. Police and an ambulance quickly arrived. Saunders and Bryan Ross were identified by the witnesses, and police were given the license plate number of the Camaro.

Hancock was taken to the hospital where she was treated for a broken nose

---

1. It is not clear from the testimony whether it was Saunders or Bryan Ross who was driving the pickup. The two may have switched positions when the truck stopped at various points.

2. One witness reported that she saw two people emerge from the Camaro, but all of the other witnesses at trial reported that appellant was traveling alone.

and facial lacerations. Since the assault she has had impaired breathing in one of her nostrils, which will require surgery to repair. Two of her teeth were also broken in the assault.

Appellant, Bryan Ross, and Robin Saunders were each indicted on charges arising out of the assault on Hancock. They were tried separately. Appellant was charged with two counts of engaging in organized criminal activity and one count of aggravated assault.[3] Because the jury convicted appellant of the first two, more serious charges, it did not reach the question on aggravated assault. Appellant was sentenced to seven-and-a-half years' imprisonment for each count, with the sentences to be served concurrently.

## DISCUSSION

### *Organized Criminal Activity*

In his first and second issues on appeal, appellant challenges the legal and factual sufficiency of the evidence supporting his convictions for engaging in organized criminal activity. In a legal sufficiency challenge, the standard of review is well settled. The question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Staley v. State*, 887 S.W.2d 885, 888 (Tex.Crim.App.1994). Any inconsistencies in the evidence should be resolved in favor of the verdict. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim. App.1988).

A person commits the crime of engaging in organized criminal activity if, "with the intent to establish, maintain, or participate in a combination . . ., he commits or conspires to commit one or more [enumerated offenses]." Tex. Penal Code Ann.

§ 71.02(a) (West Supp.2000). Among the listed offenses is aggravated assault, the lesser-included offense with which appellant was charged. *See id.* § 71.02(a)(1). A "combination" is defined as "three or more persons who collaborate in carrying on criminal activities." *Id.* § 71.01(a) (West Supp.2000).

The court of criminal appeals recently held that the phrase "carrying on criminal activities" cannot be understood to include an agreement to jointly commit a single criminal act. *See Nguyen v. State*, 1 S.W.3d 694, 697 (Tex.Crim.App.1999). Rather, the statute includes an element of intended continuity, and the State must prove that "the appellant intended to 'establish, maintain, or participate in' a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Id.*

In *Nguyen* the defendant was convicted of engaging in organized criminal activity and murder. Nguyen was dining with friends when men at another table directed lewd comments toward a woman in his party. *See Nguyen v. State*, 977 S.W.2d 450, 452 (Tex.App.—Austin 1998), *aff'd*, 1 S.W.3d 694 (Tex.Crim.App.1999). After a brief confrontation in the restaurant, Nguyen and his friends were asked to leave. *See id.* Agreeing amongst themselves to return and fight, they went to Nguyen's apartment, retrieved a gun, and returned to the restaurant. *See id.* From the car, Nguyen shot at the other group as they left the restaurant, killing the victim. *See id.* Reversing Nguyen's organized-crime conviction, this Court held that "[a]ll of the evidence here . . . indicates that the murder was committed with intent and agreement to retaliate through the commission of a *single* offense; no evidence indicates an intent to establish, maintain or participate in a group that would work together in a *continuing* course of criminal activities." *Id.* at 456 (emphasis added).

---

**3.** One organized crime count accused appellant of *causing* serious bodily harm; the other count accused him of *threatening* imminent

bodily harm by use or exhibition of a deadly weapon (a motor vehicle).

■ The case before us presents a slight twist on the issue involved in *Nguyen*. Instead of one offense, appellant and his cohorts committed a series of assaults on Hancock while driving their vehicles down I–35.[4] The incident culminated in the beating of Hancock, and the State hinged its aggravated assault charge on that final attack. The State urges that this chain of assaults constituted the "continuing course of criminal activities" required to prove that appellant participated in a combination and that *Nguyen* does not apply because that case involved only one offense.

■ We do not find *Nguyen* so easily distinguishable. In *Nguyen* we wrote, "[t]he legislative history of the statute ... indicates that a 'combination' is more than a mere conspiracy or agreement to commit a single crime or engage in a single criminal episode." 977 S.W.2d at 455. Thus, even when a defendant commits a series of offenses, the State still must prove that the defendant acted with the required specific intent. That is, the State must show that the defendant intended to " 'establish, maintain, or participate in' a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Nguyen*, 1 S.W.3d at 697.

■ A case-specific inquiry is required to determine whether a series of offenses committed by the same group indicates that a combination existed. In appropriate circumstances, the commission by the same group of more than one criminal act can, by itself, give rise to a reasonable inference of an intent to engage in a continuing course of criminal activities. If, for example, several people join together to commit a burglary one night, then commit another burglary a week later, an inference of continuity might be raised.

In the present case, however, the evidence does not show that appellant intended to participate in a group that would work together in a continuing course of criminal activities. Rather, much as in *Nguyen*, the case presents a spontaneous, retaliatory series of actions that were all part of the same criminal episode. Angry that Hancock cut him off in traffic, appellant and the passengers in the other vehicle intended a course of harassing conduct, which ultimately resulted in a physical assault. That they ended up committing a series of offenses as the harassment unfolded does not alter their apparent intent to commit just one assault. As in *Nguyen*, the State has not pointed to any evidence in the record to support a finding that there was an intent to form a combination that would carry on a continuing course of criminal activities beyond the single criminal episode involving the attack on Hancock. Under these unique circumstances, therefore, even the commission of more than one offense by appellant and his co-defendants does not give rise to a reasonable inference of an agreement as to continuity. Because the State has not proved the intent element of engaging in organized criminal activity, we hold that the evidence is legally insufficient to support his convictions of that crime.

■ Nonetheless, the court of criminal appeals recently stated that

> a court of appeals may reform a judgment of conviction to reflect conviction of a lesser included offense ... if (1) the court finds that the evidence is insufficient to support conviction of the charged offense but sufficient to support conviction of the lesser included offense and (2) either the jury was instructed on the lesser included offense ... or one of the parties asked for but was denied such an instruction.

*Collier v. State*, 999 S.W.2d 779, 782 (Tex. Crim.App.1999) (plurality opinion). In the

---

**4.** Although evidence of more than a single action or offense will often be necessary to show participation in a combination, the State need only *prove* one criminal offense to establish the offense of engaging in organized criminal activity. *See Nguyen*, 1 S.W.3d at 697.

present case, the jury was instructed on the offense of aggravated assault in conjunction with two charges of engaging in organized criminal activity. The court's charge also asked separately whether appellant committed the offense of aggravated assault, but the jury did not reach that question in its deliberations because it convicted on the greater offenses of engaging in organized criminal activity. By convicting appellant of the greater offense, the jury necessarily found that he committed the lesser offense of aggravated assault. *See* Tex. Penal Code Ann. § 71.02(a).

■ The State has offered ample evidence that appellant intentionally, knowingly, or recklessly threatened or caused bodily injury to Hancock, and that he used or exhibited a deadly weapon during the commission of the assault. *See* Tex. Penal Code Ann. §§ 22.01, 22.02 (West 1994 & Supp.2000). We therefore hold that the evidence is both legally and factually sufficient to support a conviction of aggravated assault.

In his third issue on appeal, appellant complains that the jury was not instructed on the judicial construction of the term "collaborate," as that term is used in the statutory definition of "combination." *See id.* at § 71.01. Because we have reversed his convictions for engaging in organized criminal activity, this issue is moot and we need not address it.

### Motion for New Trial

■ In his final issue on appeal, appellant urges that the trial court abused its discretion in refusing to grant his motion for new trial. In support of his motion, appellant claimed that material testimony from his two co-defendants was newly available because Saunders and Bryan Ross were, at the time of trial, awaiting sentencing and would have asserted their fifth amendment right against self-incrimi-

nation if they had been called to the stand; at the time of the motion for new trial, however, they had already been sentenced and thus would have been willing to testify at a second trial.

■ The requirements for obtaining a new trial based on newly available evidence are:

1. The newly discovered evidence was unknown to the movant at the time of his trial;

2. The movant's failure to discover the evidence was not due to his want of diligence;

3. The materiality of the evidence is such as would probably bring about a different result in another trial; and

4. The evidence is admissible, and not merely cumulative, corroborative, collateral or impeaching.

*Drew v. State,* 743 S.W.2d 207, 226 (Tex. Crim.App.1987); *see also Jones v. State,* 711 S.W.2d 35, 36–37 (Tex.Crim.App.1986); *Oestrick v. State,* 939 S.W.2d 232, 236 (Tex.App.—Austin 1997, pet. ref'd). Since all four elements must be shown to obtain a new trial, we will uphold the trial court's denial of appellant's motion if any element is disproved.[5]

To satisfy the third element of this test, the trial court must determine that the new evidence is "probably true," meaning "the whole record presents no good cause to doubt the credibility of the witness whose testimony constitutes new evidence." *See Jones,* 711·S.W.2d at 37 n. 4.

At the hearing on appellant's motion for new trial, Bryan Ross and Robin Saunders offered their version of the events that transpired on the night in question. Bryan testified that appellant and Hancock were merely playing games on the highway during what the trial witnesses had

---

5. Strong arguments can be made that the new evidence was known to appellant at the time of trial, and that since Bryan Ross and Saunders were not called to the stand, appellant's failure to elicit their testimony was due to a want of diligence. We will not address these points, however, because it is even more clear that appellant cannot satisfy the third prong of this test.

characterized as a chase. Bryan said that Hancock was never forced to stop her car, but that she stopped willingly. He claims she could have gotten away at any time and that all parties were only "playing around." He said that when he and Saunders approached Hancock's car, one of Hancock's passengers hit Saunders. To retaliate, Bryan reached into the car to hit the passenger in the back seat; any witness who said Bryan had hit Hancock repeatedly was lying. Bryan testified that he never saw appellant strike Hancock. Saunders also testified at the hearing that Hancock had not been forced from the road and that she did not recall seeing appellant hit Hancock.

Because the testimony of appellant's co-defendants directly contradicted that of the disinterested eye-witnesses who testified at trial, it appears that the trial court doubted the credibility of Saunders and Bryan Ross and concluded that the new evidence offered would probably not bring about a different result in another trial. The trial court would have been well within its discretion to determine that the testimony offered by appellant's co-defendants in the hearing on his motion for new trial was not "probably true." We find no error in the trial court's refusal to grant appellant a new trial.

## CONCLUSION

Finding no abuse of discretion, we affirm the trial court's denial of appellant's motion for new trial. We further hold that the State has failed to prove an essential element of the offense of engaging in organized criminal activity: that appellant participated in a combination formed to engage in a continuing course of criminal activity. Accordingly, we reverse appellant's convictions on those charges and render judgment acquitting him thereof. However, we hold that the evidence is legally and factually sufficient to support a conviction for the lesser-included offense of aggravated assault; we render judgment convicting appellant on that charge,

and we remand the cause for a new sentencing hearing.