NO. 07-01-0497-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL15, 2002



______________________________




IN THE INTEREST OF SAMUEL KAHN, A CHILD






_________________________________



FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;



NO. 93-542,429; HONORABLE J. BLAIR CHERRY, JR., JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Robert Alan Kahn perfected an appeal from the trial court's order denying
his motion for clarification and enforcement of a prior order regarding conservatorship of
Samuel Kahn. Pending before this Court is Kahn's motion to dismiss this appeal by which
he represents that he no longer wishes to prosecute the matter because an agreed order
has been entered below. We grant his motion and dismiss the appeal

 Without passing on the merits of the case, appellant's request is granted and the
appeal is hereby dismissed. See Tex. R. App. P. 42.1(a)(2). Having dismissed the appeal
at appellant's request, no motion for rehearing will be entertained and our mandate will
issue forthwith.

 Don H. Reavis

 Justice



Do not publish.



1) 
Appellant plead not guilty and the case was tried to a jury over three days in December
2002. The jury found appellant guilty and assessed punishment at ninety-nine years
confinement and a ten thousand dollar fine. The trial court assessed punishment in
conformity with the jury's verdict. Appellant timely perfected appeal from that judgment and
presents a single point assigning error to the trial court's denial of his motion for an
instructed verdict. 

 A motion for instructed verdict is a challenge to the legal sufficiency of the evidence. 
Coggin v. State, 123 S.W.3d 82, 89 (Tex.App.-Austin 2003, pet. ref'd). In reviewing the
legal sufficiency of the evidence, we recognize that the jury is the sole judge of the weight
and credibility of the evidence, and look at all the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2789, 61 L.Ed. 2d 560, 573 (1979); Alvarado v. State, 912 S.W.2d
199, 207 (Tex.Crim.App. 1995); Griffin v. State, 614 S.W.2d 155, 159 (Tex.Crim.App.
1981). We measure the elements of the offense as defined by a hypothetically correct jury
charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Such a charge is one
that accurately sets out the law, is authorized by the indictment, does not unnecessarily
increase the State's burden of proof or unnecessarily restrict the State's theories of liability,
and adequately describes the particular offense for which the defendant was tried. Id. The
standard is the same in both direct and circumstantial evidence cases. Burden v. State, 55
S.W.3d 608, 612-13 (Tex.Crim.App. 2001). The standard for legal sufficiency review
"gives full play" to the jury's responsibility "fairly to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." 
Jackson, 443 U.S. at 319; Sanders v. State, 119 S.W.3d 818, 820 (Tex.Crim.App. 2003). 

 Where, as here, the State's case is based in part on the testimony of an accomplice, 
a sufficiency review must incorporate the accomplice-witness rule stated in article 38.14
of the Code of Criminal Procedure. It provides "A conviction cannot be had upon the
testimony of an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient if it merely
shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon
1979). Application of that rule requires us initially to eliminate the accomplice testimony
from consideration and then examine the remaining portions of the record to see if there
is any evidence that tends to connect the accused with the commission of the crime. 
Solomon v. State, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001). The corroborating evidence
need not be sufficient by itself to establish guilt. The accomplice-witness rule is not based
on federal or state constitutional notions of sufficiency, it simply requires "other" evidence
tending to connect the defendant to the offense. Id. 

 The offense of engaging in organized criminal activity is defined by section 71.02(a)
of the Penal Code. (Vernon supp. 2004). It provides, in relevant part, that a person
commits an offense if, with the intent to establish, maintain, or participate in a combination
or in the profits of a combination, he commits or conspires to commit theft. Id. Section
71.01 defines "combination" as "three or more persons who collaborate in carrying on
criminal activities[.]" Tex. Penal Code Ann. § 71.01(a) (Vernon 2003). 

 Viewing the allegations in the indictment against the statutory language, the
elements the State was required to prove were (1) the existence of a combination and (2)
that appellant committed theft, (3) with intent to participate in the combination or profits of
the combination. (2) See Hart v. State, 89 S.W.3d 61, 63-64 (Tex.Crim.App. 2002); Munoz
v. State, 29 S.W.3d 205, 208 (Tex.App.-Amarillo 2000, no pet.). To establish a
combination the State must show the members of the combination mutually agreed or
intended to work together. Munoz, 29 S.W.3d at 208. The agreement must be to the
commission of more than one offense or criminal episode. Nguyen v. State, 1 S.W.3d 694,
697 (Tex.Crim.App. 1999); Ross v. State, 9 S.W.3d 878, 882 (Tex.App.-Austin 2000, pet.
ref'd). Such agreements may, and almost necessarily must, be established by
circumstantial evidence. Munoz, 29 S.W.3d at 209.

 The State sought to show appellant was a member of a combination engaged in a
course of theft of vehicles and industrial equipment, the primary members of which were
Delbert Morris, Mark Byers, Vicki Hardy, Paula Cardosi, and appellant. Cardosi, whose
testimony is subject to the accomplice-witness rule, testified that in the summer of 2001
she, Morris and appellant would drive around Amarillo "almost everyday" looking for things
to steal. She recounted an instance when she was driving and appellant stole a Harley
Davidson motorcycle from a dealership and subsequently sold it to Morris. In a separate
incident when she was driving with appellant, he stole a motorcycle from a motel parking
lot. Cardosi testified she was with appellant when he stole two U-haul vehicles and sold
the contents to Morris. Cardosi said she made several trips with Morris and others to a
property in rural Carson County. The trips were made in the early morning hours for the
purpose of Morris's delivery of stolen vehicles for hiding and subsequent disassembly. 
Appellant did not participate in those trips. 

 Nathan Moore, also identified as an accomplice witness, testified he overheard a
conversation between appellant and Morris concerning appellant's sale of a silver Corvette
to Morris for "something like" $2,000. Moore agreed he heard appellant "say something
about" the car being stolen. Moore also said appellant sold to Morris a second silver
Corvette that appellant owned. 

 The State called Ellen Montieth concerning a brown Chevrolet truck purchased for
her by her parents. She testified a person named Randy Hutchinson took the truck keys
from her purse and left with her truck. Three days later she asked appellant to help
recover her truck and he agreed. Riding together they located the truck, broke into it, and
drove it to the home of a friend of appellant. Montieth testified appellant wanted the pickup
and told her to report the truck as stolen. She testified, "I told him not to, because it was
my parents . . . ." She believed he wanted the truck for parts to fix a truck he owned. 
Montieth did not agree to report the truck as stolen at that time, and when she returned for
the truck the next day it was gone. She later confronted appellant and asked him "why'd
you take my pickup?" He replied "I told you to report it stolen." 

 In November 2001, law enforcement officers executed a search warrant on the rural
Carson County property occupied by Byers and Hardy. At trial officers identified six
vehicles, or parts of vehicles, found on the property, each of which had been reported
stolen in Amarillo. Four of the vehicles were trucks, the others were a 1999 Pontiac
Firebird and parts of a 1984 Corvette. Ellen Montieth identified the truck shown in state's
exhibit six as the remains of her truck. Officers also identified a trailer, ditch digging
equipment, and skid steer loader found on the property as having been stolen in Amarillo.

 The State presented the testimony of Abel Siller, Jr., a "security threat group officer"
with the Texas Department of Criminal Justice, Institutional Division. Siller interviewed
appellant in connection with an investigation of threats made against appellant by other
prison inmates. During that interview appellant admitted to being part of a group that stole
vehicles from dealerships, particularly new pickup trucks and Harley Davidson motorcycles. 
He indicated to Siller he had stolen between forty and fifty vehicles. Siller further said
appellant told him that he had "current charges out of Carson County," that police had
found vehicles in Carson County but "law enforcement didn't have s--t on him because he
- the ranch didn't belong to him." On cross-examination, Siller acknowledged that
appellant did not tell him he had stolen any of the vehicles that were located in Carson
County.

 The evidence of the existence of a combination begins with Cardosi's testimony
relating collaboration in the theft of vehicles and other items, and in the transfer of stolen
vehicles from Amarillo to the Carson County property. Her testimony identified the
members of the combination and explicated their roles, providing evidence of a
combination by which appellant would steal vehicles and sell them, or the property they
contained, to Morris who would deliver the vehicles to Byers and Hardy for disassembly. (3) 
Cardosi's testimony concerning the roles of appellant and Morris in the combination was
supported by Moore's testimony that appellant agreed to sell a Corvette to Morris amid
discussion that it was stolen. The nature of the relationship between those two parties was
shown regardless whether the Corvette appellant sold to Morris was shown to be the same
one from which parts were found at the Carson County property.

 The parties do not address application of the accomplice-witness rule to the
evidence establishing a combination. Because the State is not required to show the
defendant was a member of the combination to support a conviction for engaging in
organized criminal activity, Hart v. State, 89 S.W.3d 61, 63 (Tex.Crim.App. 2002), the
evaluation of whether non-accomplice witness evidence "tends to connect the accused with
the commission of the crime," Solomon, 49 S.W.3d at 361, may not be applicable to that
element. In any event, the testimony of accomplices Cardosi and Moore concerning the
existence of the combination is corroborated by that of Siller, which includes appellant's
statement to Siller he was part of a group that stole forty to fifty vehicles. The number of
vehicles stolen supports an inference that the group's collaboration extended beyond a
single offense or criminal episode. See Nguyen, 1 S.W.3d at 697.

 The second and third elements required that the State prove appellant committed
at least one of the thirteen thefts included in the court's charge, with the intent to participate
in the combination or the profits of the combination. Appellant contends there is no
evidence he committed any of those thirteen thefts. (4) We disagree. No specific vehicle
Cardosi testified she witnessed appellant steal was discovered at the Carson County
property. But Montieth's testimony told of appellant's demonstrated ability to break into her
truck, his knowledge of its location shortly before it was taken, his instruction to her to
report the truck stolen and his desire to have the truck for parts. As noted, Montieth also
testified that, in response to her later accusation, "Why'd you take my pickup?" appellant
replied, "I told you to report it stolen." (5) Appellant's reply was an adoptive admission, see
Flores v. State, 84 S.W.3d 675, 685 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd)
(defendant's failure, during taped conversation with another, to deny previous extraneous
theft mentioned by the other or to deny in that conversation he knew to what other referred,
was evidence of guilt of extraneous theft), and, taken together with Montieth's other
testimony, provided evidence from which the jury rationally could conclude appellant was
responsible for theft of her truck. Given the evidence of the relationships among appellant,
Morris and Byers, the jury also could infer from the discovery of that truck, disassembled,
at the Carson County property that appellant's theft of the truck was with the intent to
participate in the combination.

 We find the evidence, viewed in the light most favorable to the verdict, as it must be,
sufficient to permit a rational jury to find each of the essential elements beyond a
reasonable doubt. We overrule appellant's sole issue on appeal and affirm the judgment
of the trial court.

 

 James T. Campbell

 Justice



Johnson, C.J., not participating. 



Do not publish.
1. In the charge submitted to the jury, the number of theft offenses alleged was
reduced to thirteen.
2. The State's brief mistakenly asserts appellant was charged with "conspiring with
several others to commit aggregated theft." Although Section 71.02(a) authorizes a charge
based on conspiracy to commit a listed offense, the indictment against appellant alleged
he committed theft, not that he conspired to commit theft. One of the aspects of the
hypothetically correct charge under which we must measure the sufficiency of the evidence
is that it be "authorized by the indictment." Malik, 953 S.W.2d at 240.
3. In that respect, we cannot agree with appellant's contention that none of the
accomplice witnesses admitted to involvement in the combination. Cardosi's testimony she
assisted Morris with delivery of stolen vehicles to Carson County admits her involvement.
4. Appellant cites McLaren v. State, 2 S.W.3d 595 (Tex.App.-El Paso 1999), rev'd
sub nom. Otto v. State, 95 S.W.3d 282 (Tex.Crim.App. 2003), in which the court of appeals
found there was no evidence McLaren performed the overt act alleged in an indictment
charging him with organized criminal activity through a conspiracy to commit aggravated
kidnaping. Prosecution for organized criminal activity based on conspiracy to commit one
of the underlying offenses listed in Penal Code Section 71.02 requires proof of the
defendant's performance of an overt act. Tex. Penal Code Ann. § 71.01(b) (Vernon Supp.
2004). As previously noted, appellant clearly was indicted and tried on the theory he
committed theft, not that he conspired to commit theft. The use of the phrase "overt act"
in the indictment and charge, though not complained of, was thus inappropriate. See State
v. Duke, 865 S.W.2d 466, 467-68 (Tex.Crim.App. 1993). 
5. A pretrial statement Montieth gave to investigators indicates she later told her
mother to report the truck stolen and to name appellant as "the suspect."