NO. 12-00-00242-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


DOROTHY BINGHAM,
§
 APPEAL FROM THE SECOND

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 CHEROKEE COUNTY, TEXAS

 

 Dorothy Bingham ("Appellant") appeals her convictions for Engaging in Organized Criminal
Activity and Murder. She was indicted, along with several other individuals, for the murder of
Bobby Sexton ("Bobby"). The jury, after finding her guilty, assessed her punishment at thirty years
of imprisonment on each charge. Appellant raises seven issues on appeal. She first challenges the
legal sufficiency of the evidence in both the engaging in organized criminal activity and the murder. 
We will address these issues only and reverse and render a judgment of acquittal.


Factual Background


 Patricia Sexton ("Patricia"), Appellant's granddaughter, was married to Bobby. Even though
a divorce action had been initiated and Bobby had been awarded custody of their children, he and
Patricia had reconciled and were living together at the time of his death. However, according to the
record, Patricia told Michael Fielding ("Fielding"), Bobby's confessed killer and Patricia's lover, that
all was not well and that Bobby was raping and beating her. Fielding testified that Appellant and
Patricia wanted him to buy cocaine to plant on Bobby so that he would be arrested and taken out of
the picture. This plan was abandoned when Patricia sought Fielding's help in killing Bobby.
Fielding testified that he shot Bobby in the chest at close range with a shotgun. He named Willie
Wright ("Wright") as an accomplice who helped set Bobby up and dispose of his body. They carried
the body in a Suburban automobile owned by Bobby and Patricia to a remote area near the Neches
River.

 The authorities first became involved when Patricia reported Bobby as a missing person.
After blood samples taken from Bobby and Patricia's Suburban turned out to be human blood, the
sheriff's department changed the investigation from a missing person case to a possible homicide. 
A break came when Wright was arrested on an intoxication charge. He stated that Fielding shot
Bobby at the Bingham Wrecking Yard and they moved the body to the Neches area in the Suburban.

 Patricia denied any involvement in the murder and also testified that Appellant had nothing
to do with it. She stated that her mother, Linda Gail Bingham ("Linda"), and her mother's boyfriend,
Al Clark ("Clark"), moved in with her after Bobby disappeared. Patricia testified that a conversation
with Clark indicated to her that he had killed Bobby. The evidence that tended to connect Appellant
to the crimes charged was 1) Fielding's testimony that two days before the murder, Appellant was
with Patricia when Fielding agreed to kill Bobby and that during Fielding's visit with Patricia,
Appellant handed Patricia a box of rubber gloves for Fielding to use in the murder; 2) Clark's
testimony that in the week or so before the murder, Appellant asked about guns that could not be
traced by ballistics; and 3) Linda's testimony that prior to the murder, Patricia told Appellant that
she (Patricia) needed to get rid of Bobby and that after the murder, Appellant asked Patricia if
everything had been cleaned up when the police were at the alleged crime scene and, in another
conversation, discussed Bobby's death benefits with Patricia.


Standard of Review and Proof Required


Standard of Review

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979); Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.--San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency challenge is
whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of
fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443
U.S. at 319, 99 S.Ct. at 2789; Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). An
appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported
by more than a mere modicum of evidence." Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988). The jury is the exclusive judge of the credibility of the witnesses and of the weight to
be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Likewise,
reconciliation of conflicts in the evidence is within the exclusive province of the jury. Losada v.
State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). A successful legal sufficiency challenge will
result in rendition of an acquittal by the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 40-41,
102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982).

Engaging in Organized Criminal Activity

 To secure a conviction for engaging in organized criminal activity, the State must prove that
the accused, 1) with intent to establish, maintain, or participate in a combination, 2) committed or
conspired to commit one or more enumerated offenses. Tex. Pen. Code Ann. § 71.02(a) (Vernon
Supp. 2002). Additionally, the word "combination" appearing under the first prong of section
71.02(a) has been defined as meaning "three or more persons who collaborate in carrying on criminal
activities, although . . . 1) [the] participants may not know each other's identity, 2) membership in
the combination may change from time to time, and 3) [the] participants may stand in a
wholesaler-retailer or other arm's-length relationship in illicit distribution operations." Tex. Pen.
Code Ann. § 71.01(a)(1)-(3) (Vernon Supp. 2002). In turn, this definition has been interpreted by
the court of criminal appeals as obligating the State to prove not only that the accused intended to
establish, maintain, or participate in a group of three or more but also that the members of the group
intended to work together in a continuing course of criminal activities. Dowdle v. State, 11 S.W.3d
233, 235-36 (Tex. Crim. App. 2000); Nguyen v. State, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999).

 Given the foregoing definition and interpretation, two observations are of particular
importance. First, section 71.02(a) requires proof of two different mens rea, i.e., that of the accused
and that of the group. Not only must the defendant intend to participate in, maintain, or establish
a group, but also the group must intend to work together in a continuing course of criminal activity.
Dowdle, 11 S.W.3d at 235-36. In other words, there must be evidence of an agreement to act
together in this continuing course of activity. Barber v. State, 764 S.W.2d 232, 235 (Tex. Crim.
App. 1988). As has been recognized for years, mens rea is a rather difficult element to prove by
direct evidence. Seldom does the accused admit to having the state of mind required to support
conviction. Thus, circumstantial evidence may be used to prove it. Morales v. State, 828 S.W.2d
261, 263 (Tex. App.-Amarillo 1992), aff'd, 853 S.W.2d 583 (Tex. Crim. App. 1993). 

 Second, the continuing course of criminal activity must encompass more than one crime,
Nguyen, 1 S.W.3d at 697, or criminal episode. Ross v. State, 9 S.W.3d 878, 882 (Tex. App.-Austin
2000, no pet.). That is, it is not enough to show that the members came together only to commit one
offense. Id. For instance, the facts in Nguyen were held insufficient to illustrate a continuing course
of illegal conduct because the group involved simply desired to avenge an insult. Nguyen, 1 S.W.3d
at 696-97. Once the insult was avenged through the commission of a single crime, the reason for
and existence of the group dissipated.

 Similarly, in Ross, the boys forming the group were overcome with road rage, and because
of that, sought to retaliate against the female who purportedly cut them off while driving. Ross, 9
S.W.3d at 880. And, although in pursuing their goal they committed several criminal offenses,
nothing indicated that once they achieved their goal the members intended to continue their illegal
conduct. Id. Given this, the Ross court felt compelled to hold that the evidence, at most, simply
depicted that the members temporarily organized to commit one act, but ended up committing a
series of offenses that were part of the same criminal episode, which did not satisfy the elements of
section 71.02(a).

Murder

 A person commits murder if he intentionally or knowingly causes the death of an individual. 
See Tex. Pen. Code Ann. § 19.02 (Vernon 1998). A person is criminally responsible as a party if
the offense is committed by his own conduct, by the conduct of another for which he is criminally
responsible, or by both. Tex. Pen. Code Ann. § 7.01(a) (Vernon 1998). Under the law of parties,
a person is criminally responsible for an offense committed by the conduct of another if, acting with
intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense. Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon
1998).

 The law of parties permits the State to enlarge a defendant's criminal responsibility to acts
in which he may not be the principal actor. Goff v. State, 931 S.W.2d 537, 544 (Tex. Crim. App.
1996). However, the State's case against a defendant under the law of parties is dependent, at least
in part, on the conduct of another. Id. Evidence is sufficient to convict under the law of parties
where the defendant is physically present at the commission of the offense and encourages the
commission of the offense either by words or other agreement. Ransom v. State, 920 S.W.2d 288,
302 (Tex. Crim. App. 1996) (op. on reh'g). The evidence must show that at the time of the offense,
the parties were acting together, each doing some part of the execution of the common purpose.
Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986). 

 In determining whether a defendant acted as a party, a reviewing court may look to events
occurring before, during, and after the commission of the offense, and may rely on actions of the
defendant that show an understanding and common design to do the prohibited act. Cordova v.
State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). The accused must know that he is assisting in
the commission of the offense. Pesina v. State, 949 S.W.2d 374, 382-83 (Tex. App.--San Antonio
1997, no pet.). Intent may be inferred from circumstantial evidence such as the acts, words, and
conduct of the accused. Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). 

 

Issues and Application of Standard of Review


 Appellant's first issue challenges the legal sufficiency of the evidence on the charge of
engaging in organized criminal activity. Specifically, Appellant contends that the State failed to
produce evidence of a combination or her participation in it.

 After a review of the record, we believe the State's evidence is legally insufficient to support
a conviction for engaging in organized criminal activity. The elements of engaging in organized
criminal activity are 1) a person, 2) with intent to establish, maintain or participate in a combination,
3) commits or conspires to commit, 4) a listed offense. Mast v. State, 8 S.W.3d 366, 369 (Tex.
App.-El Paso 1999, no pet.). Stated another way, to be guilty of the offense of engaging in
organized criminal activity, an actor must commit or conspire to commit one or more of the crimes
listed in section 71.02, with the specific intent of participating in a criminal group that includes the
minimum number of persons specified in the statute. Nguyen, 1 S.W.3d at 697; Barber, 764 S.W.2d
at 235 (applying prior law requiring five or more persons). The end result of the agreement of the
combination must be to commit more than one of the listed offenses. Nguyen, 1 S.W.3d at 697. A
person could be a member of a combination without committing the offense of engaging in
organized criminal activity. If that member does not commit or conspire to commit one of the listed
offenses, or conspires to commit a listed offense, but does not perform an overt act in pursuance of
the agreement, then he has not committed the offense of engaging in organized criminal activity. 
See Tex. Pen. Code Ann. §§ 71.01-.02; Barber, 764 S.W.2d at 235. 

 The testimony tending to connect Appellant to the alleged combination consists of 1)
Fielding's testimony that Appellant was with Patricia when he agreed to kill Bobby, which was
approximately two days before the murder, and that during Fielding's visit with Patricia, Appellant
handed Patricia a box containing rubber gloves for Fielding to use in the murder; 2) Clark's
testimony that in the week or so before the murder, Appellant asked about a gun that could not be
traced by ballistics; and 3) Linda's testimony that prior to the murder, Patricia told Appellant that
she (Patricia) needed to get rid of Bobby and that after the murder, Appellant asked Patricia "had it
been cleaned up" when the detectives came to the wrecking yard and, in a separate conversation,
discussed Bobby's death benefits with Patricia. 

 Although the State contends that the evidence discussed above is legally sufficient to support
Appellant's conviction, we conclude the evidence fails to show that Appellant had the requisite mens
rea to be a member of a combination committed to a course of continuing criminal activity. Dowdle,
11 S.W.3d 235-26. In reviewing the record, we note that although Fielding testified that Appellant
was present when he told Patricia he would kill Bobby, he also stated that Appellant remained in
Patricia's vehicle while he and Patricia talked. We find no indication in the record that Appellant
knew the purpose of Fielding and Patricia's conversation or that Appellant could hear them talking. 
Further, although Fielding testified that Appellant handed Patricia a box of gloves to be used in the
murder, he did not testify to any facts that indicate Appellant knew the contents of the box or what
use was to be made of the contents. Moreover, the record does not establish why Appellant asked
a question about untraceable guns, what she planned to do with the information, whether she
conveyed the information to anyone else, or whether she had any role in obtaining the murder
weapon. Finally, neither Appellant's question about whether the wrecking yard had been cleaned
up nor the discussion about Bobby's death benefits is shown to have occurred in any context that
demonstrated Appellant was involved in a combination to murder Bobby or that she was even
referring to the murder. 

 Viewing the evidence in the light most favorable to the verdict, we conclude that the record
in this case indicates, at best, that there may have been an agreement by Patricia, Fielding and Wright
to commit a single crime. We further conclude that the evidence, considered as a whole, is legally
insufficient to show that Appellant intended to "establish, maintain, or participate in a combination"
as required by section 72.02 and creates no more than a suspicion of Appellant's guilt. Proof which
amounts to no more than a strong suspicion is insufficient to sustain a conviction. Tippitt v. State,
41 S.W.3d 316, 326 (Tex. App.--Fort Worth 2001, no pet.). However, even if the evidence is
legally sufficient to establish the requisite mens rea, we find nothing in the record that shows
Appellant, or anyone else who allegedly participated in the combination, planned to commit any
criminal act other than the murder. The record reveals that the plan to plant the cocaine on Bobby
was abandoned and that the goal of the alleged combination was Bobby's murder. Consequently,
we conclude the evidence is legally insufficient to sustain Appellant's conviction for engaging in
organized criminal activity. Nguyen, 1 S.W.3d at 697. Appellant's first issue is sustained.

 In her second issue, Appellant challenges the legal sufficiency of the evidence that she was
a party to murder. Specifically, Appellant contends the State did not produce sufficient evidence for
a reasonable trier of fact to find beyond a reasonable doubt that she solicited, encouraged, directed,
aided or attempted to aid Fielding in murdering Bobby as required by section 7.02(a)(2) of the Penal
Code. The testimony tending to connect Appellant to Bobby's murder consists of 1) Fielding's
testimony that during Fielding's visit with Patricia, Appellant handed Patricia a box containing
rubber gloves for Fielding to use in the murder; 2) Clark's testimony that in the week or so before
the murder, Appellant asked about a gun that could not be traced by ballistics; and 3) Linda's
testimony that after the murder, Appellant asked Patricia "had it been cleaned up" when the
detectives came to the wrecking yard and discussed Bobby's death benefits with Patricia. 

 As stated above, we find no evidence in the record that Appellant knew what was in the box
that she allegedly handed Patricia or what use was planned for the contents. Appellant's question
about "it being cleaned up" is not linked to the crime scene where Bobby was killed. Lastly, the
testimony about death benefits and guns is not shown does not amount to evidence connecting
Appellant with the planning or the act of Bobby's murder. Although Appellant may have helped her
granddaughter, Patricia, try to get out of a bad situation once the murder had been committed, there
is no evidence that she knew if, when or how Bobby was to be murdered. 

 The State contends this is sufficient evidence to convict under the law of parties. We do not
agree. Appellant cannot be found guilty as a party to murder under section 7.02(a)(2) of the Penal
Code without legally sufficient evidence that she was "acting with intent to promote or assist the
commission of" an intentional murder. Martinez v. State, 763 S.W.2d 413, 420 n. 5 (Tex. Crim.
App. 1988). To accept the State's contention would require us to stack an inference upon an
inference. However, when conducting a legal sufficiency review, a vital fact may not be established
by stacking inference upon inference. See, e.g., Huntley v. State, 4 S.W.3d 813, 817 (Tex.
App.-Houston [1st Dist.] 1999, pet. ref'd). 

 In summary, viewing all of the evidence in the light most favorable to the State and giving
full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic facts to ultimate facts, we hold that no
rational trier of fact could have found beyond a reasonable doubt that Appellant was a party to
Bobby's murder. See Jackson, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; Santellan v. State, 939
S.W.2d 155, 160 (Tex. Crim. App. 1997). The record establishes, at best, only a "mere modicum"
of evidence of Appellant's guilt, which will not support a conviction beyond a reasonable doubt. 
See McGinn v. State, 961 S.W.2d 161, 168 (Tex. Crim. App. 1998) (citing Jackson, 443 U.S. at
320, 99 S. Ct. at 2789). Consequently, we hold that the evidence is legally insufficient to support
Appellant's conviction for murder. We further hold that the evidence is legally insufficient to
support a finding under the law of parties. Therefore, we sustain Appellant's second issue. Because
of our holding on these issues, we need not address the remaining issues. Tex. R. App. P. 47.1.


CONCLUSION


 Based upon our review of the record, we hold that the evidence is legally insufficient to
support the jury's findings that Appellant was guilty of engaging in organized criminal activity and
murder.

 The judgment of the trial court is reversed and a judgment of acquittal is ordered.


 JIM WORTHEN 

 Justice



Opinion delivered August 16, 2002.

Panel consisted of Worthen, J., and Griffith, J.

Gohmert, Jr., Louis B., Chief Justice, dissenting.



 Finding sufficient evidence to support the jury's verdict under the law applicable to these
offenses, I must respectfully dissent with the learned justices in the majority. 






 LOUIS B. GOHMERT, JR. 

 Chief Justice





















(DO NOT PUBLISH)