# NO. 12-12-00236-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ORLANDO LEE CASTILLO,*<br>*APPELLANT* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Orlando Lee Castillo appeals his convictions for engaging in organized criminal activity and deadly conduct. In one issue, Appellant argues that the evidence is legally insufficient to support the convictions. We reverse the judgment of conviction for engaging in organized criminal activity and render a judgment of acquittal on that charge.   We affirm the judgment of conviction for deadly conduct.

### BACKGROUND

On February 3, 2011, Appellant was charged by indictment with two counts of engaging in organized criminal activity and two counts of deadly conduct.   He pleaded not guilty to all four counts in the indictment, and the case proceeded to a jury trial.

At the conclusion of the trial, the jury found Appellant guilty of the first count of the indictment, the offense of engaging in organized criminal activity, and the third count of the indictment, the offense of deadly conduct. However, the jury acquitted Appellant of the other two counts of the indictment. The jury assessed Appellant's punishment at ten years of imprisonment for the offense of engaging in organized criminal activity, and also found that he used or exhibited

a deadly weapon, a firearm, during the commission of the offense. The jury recommended that Appellant's sentence be suspended, that he be placed on community supervision and that he be assessed a fine of $10,000. Further, the jury assessed Appellant's punishment at five years of imprisonment for the offense of deadly conduct. The trial court sentenced Appellant in accordance with the jury's recommendations and ordered that the sentences run concurrently. This appeal followed.

**CORROBORATION OF ACCOMPLICE WITNESS TESTIMONY**

In his sole issue, Appellant makes three arguments. The first of those arguments is that there is no corroboration of the accomplice witness's testimony.

**Corroboration Requirement**

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the accused with the offense committed. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Further, the corroboration is not sufficient if it merely shows the commission of the offense. *Id.* An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged. *Id*.

To determine whether an accomplice's testimony is sufficiently corroborated, we eliminate from consideration the testimony of the accomplice witness and examine the remaining evidence to ascertain whether there is evidence that tends to connect the accused to the offense. *Sexton v. State*, 51 S.W.3d 604, 611 (Tex. App.–Tyler 2000, pet. ref'd). In determining whether evidence tends to connect a defendant to the offense, we must view the corroborating evidence in the light most favorable to the jury's verdict. *Batts v. State*, 302 S.W.3d 419, 433 (Tex. App.–Houston [14th Dist.] 2009, pet. ref'd). If the combined weight of the nonaccomplice evidence tends to connect the defendant to the offense, the requirement of Article 38.14 has been fulfilled. *Id*.

It is not necessary that the corroborative evidence directly link the accused to the offense or be sufficient in itself to establish guilt beyond a reasonable doubt. *Sexton*, 51 S.W.3d at 611.

2

All facts and circumstances may be looked to as furnishing the necessary corroboration. *Id*. Corroboration may rest on direct or circumstantial evidence. *Gaston v. State*, 324 S.W.3d 905, 909 (Tex. App.–Houston [14th Dist.] 2010, pet. ref'd). A defendant's own statement can be used as corroboration. *See Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007).

**Testimony of Accomplice**

Dustin Neal Pharis was an accomplice because he was indicted for the same offenses as Appellant. *Ex parte Zepeda*, 819 S.W.2d 874, 876 (Tex. Crim. App. 1991). He admitted pleading guilty to two counts of engaging in criminal activity, and two counts of deadly conduct. Pharis also admitted that as part of his plea bargain, he agreed to testify against his codefendants, including Appellant.

Pharis testified that he and Appellant worked together. He stated that after work on July 2, 2010, he went to The Iron Horse, a bar in Palestine. Appellant and his girlfriend, Heather Holmes, who is also Pharis's cousin, were with him. He testified that they drank, played pool, and took some Xanax. At some point during the evening, Pharis sold a "little piece of Xanax" to Jose Estrada, Jr. According to Pharis, Estrada was unhappy with the Xanax, they argued, and the argument escalated into a fight that included Appellant and several other people.

Pharis testified further that after the fight, he, Appellant, and Holmes left in a white extended cab Chevrolet Z-71 pickup. Holmes drove because Pharis and Appellant were too intoxicated to drive. Pharis stated that he and Appellant were mad about what had occurred at the bar, so they went to Appellant's house, where "someone" got Appellant's rifle and bullets. Pharis stated that when they got back in the pickup, Holmes was driving, and he was sitting in the back seat behind Appellant. He testified that they went back to the bar, and that Appellant leaned out of the pickup, held the rifle with both hands, and fired three or four gunshots towards the bar. Then, Pharis stated, they traveled to a house located at 919 North Explanade in Palestine. Pharis believed a person Appellant fought with at the bar had some "relationship" to the house. He testified that when they arrived, Appellant fired three or four shots towards the house. He also testified that he believed Appellant was aiming at the house.

Pharis related that they drove away and had not gone far when Appellant threw the rifle out of the pickup because they were being followed by a City of Palestine patrol vehicle. He remembered that the rifle was thrown out near the ground. He denied firing a weapon that night.

3

**Testimony of Other Witnesses**

The bartender where the fight occurred testified that after the fight, she saw a woman accompany Appellant and Pharis to a white extended cab pickup. A waitress at the bar testified that she was outside and saw a white extended cab pickup pass by with the driver's side window down. She stated that she could identify Holmes as the driver, but was unable to identify the other occupants of the pickup. She also testified that she saw an "arm raise up on the passenger's side" of the pickup and immediately heard three gunshots.

Jose Estrada, Sr. testified that on July 3, 2010, at approximately 2:30 a.m., he was sleeping in the back of the house located at 919 North Esplanade when he heard one or two noises. He ran outside and saw that his truck had been shot through the back window. He also stated that his house was shot through the door to a room on the left side of the house. Estrada, Sr. testified that he saw a white extended cab pickup drive in front of his house a few minutes later.

Several Palestine police officers also testified. Corporal William Martin testified that he and another officer found two spent shell casings in front of the bar. Officer Joseph Tinsley identified the spent shell casings as Wolf 7.62 casings. Sergeant Larry Boyer testified that when he arrived at the Estrada residence, he noticed a white pickup turning onto Esplanade. The pickup matched the description of the pickup involved in the shooting at the bar. Sergeant Boyer began following the pickup and called for backup. Ultimately, the pickup stopped on Jackson Street, where Sergeant Boyer and the backup officers removed Appellant, Holmes, and Pharis from the pickup and handcuffed them.

Detective James Muniz stated that at the scene of the arrest, he and other officers discovered Wolf 7.62 spent shell casings in the cab and bed of the pickup, and rifle cartridges inside the cab and on the ground beside the pickup. Officer Tinsley also discovered Wolf 7.62 shell casings at the shooting scene on Esplanade. Officer Katie Perkins testified that she located an SKS 762 semiautomatic rifle in a ditch at the corner of two streets along the route the pickup had taken immediately before the arrest of its occupants. She testified that even though it had been raining that night, the rifle was not wet when she discovered it.

Corporal Martin also testified that he activated the video recording system in his patrol car and placed Appellant and Pharis in his patrol unit. According to Officer Martin, the recording showed Appellant telling Pharis that he (Appellant) would get at least eight years for firing a

4

weapon at someone. Further, Officer Martin testified, the recording showed Appellant wondering aloud about whether he would be charged with aggravated assault with a deadly weapon or attempted murder. Deputy Chris Calloway, a sergeant with the Anderson County Sheriff's Office, testified that when Appellant arrived at the jail, he patted him down and found four rounds of Wolf cartridges in Appellant's pocket.

The testimony of these witnesses, along with Appellant's own statements as recorded on the video recording system in Corporal Martin's patrol car, tends to connect Appellant to the crimes. This evidence also corroborates Pharis's testimony that Appellant fired the shots at the bar and at the house on Esplanade while he and Pharis were passengers in the white extended cab pickup driven by Holmes. Accordingly, we overrule the portion of Appellant's sole issue that relates to the corroboration of the accomplice testimony.

### SUFFICIENCY OF THE EVIDENCE

Also in his first issue, Appellant contends that the evidence is legally insufficient to support the jury's verdicts because there is insufficient direct evidence to establish that he committed the crimes.

### Standard of Review

In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are

5

treated equally. *Id*. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**Applicable Law**

A person engages in organized criminal activity if, with the intent to establish, maintain, or participate in a combination, the person commits or conspires to commit one or more of the offenses enumerated in Texas Penal Code Section 71.02, subsections (a)(1) through (a)(17). TEX. PENAL CODE ANN. § 71.02(a) (West Supp. 2012). "Combination" means three or more persons who collaborate in carrying on criminal activities. *Id*. § 71.01(a) (West 2011). "Collaborate in carrying on criminal activities" has been defined as agreeing to "work together in a continuing course of criminal activities." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999). In other words, there must be "continuity—something more than a single, ad hoc effort." *Id*. Here, the State alleged that Appellant committed deadly conduct—one of the offenses listed in Section 71.02(a)(1). Accordingly, to support Appellant's conviction for engaging in organized criminal activity as alleged in count one of the indictment, the State's evidence must show (1) that Appellant intended to participate in a group of three or more; (2) that the group intended to work together in ongoing criminal activities; and (3) that Appellant committed the offense of deadly conduct. *See* TEX. PENAL CODE ANN. §§ 71.01(a), 71.02(a)(1); *Nguyen*, 1 S.W.3d at 697.

Evidence of a spontaneous, retaliatory series of actions that are all part of the same criminal episode, without more, will not support a conviction for engaging in organized criminal activity. *Ross v. State*, 9 S.W.3d 878, 882 (Tex. App.–Austin 2000, pet. ref'd). The evidence must also show that there was an intent to form a combination that would carry on a continuing course of criminal activities beyond the single criminal episode. *Id*.; *see also, e.g.*, *Lashley v. State*, 401 S.W.3d 738, 744 (Tex. App.–Houston [14th Dist.] 2013, no pet.) (holding that to satisfy continuity requirement as set forth in *Nguyen*, evidence must show combination's members were more than temporarily organized to engage in single criminal episode). Direct evidence of the defendant's intent is not required. *Arredondo v. State*, 270 S.W.3d 676, 682 (Tex. App.–Eastland 2008, no pet.). It is permissible to infer an agreement among a group working on a common project when each person's action is consistent with realizing the common goal. *Id*.

To support Appellant's conviction for deadly conduct as alleged in the third count of the

indictment, the State's evidence must show that Appellant (1) knowingly discharged a firearm at or in the direction of a habitation, and (2) was reckless as to whether the habitation was occupied. TEX. PENAL CODE ANN. § 22.05(b)(2) (West 2011). A person acts knowingly with respect to the nature of his conduct or the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id*. § 6.03(b) (West 2011). A person acts knowingly with respect to the result of his conduct if he is aware that his conduct is reasonably certain to cause the result. *Id*. A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id*. § 6.03(c) (West 2011).

**Engaging in Organized Criminal Activity**

In *Ross*, the defendant became enraged when he was inadvertently cut off on the interstate by another driver. *Ross*, 9 S.W.3d at 880. He and his passengers then engaged in a series of threatening actions, including attempting to force the victim's car into the center median. *Id*. When the victim escaped and exited the interstate, the defendant and his passengers blocked her car at a red light. *Id*. They then forced her out of her car and physically beat her. *Id*. The State argued that this series of continuing assaults satisfied the continuity requirement for the offense of engaging in organized criminal activity. *Id*. at 882. The Austin court of appeals disagreed, holding that proof of a series of actions that were all part of the same criminal episode is insufficient to establish a continuing course of criminal activities. *Id*.

Other courts also have held that evidence of multiple criminal violations which constitute nothing more than a single criminal episode does not establish the requisite continuity for engaging in organized criminal activity. *See, e.g.*, *Lashley*, 401 S.W.3d at 744-45 (holding evidence legally insufficient to sustain conviction where multiple burglaries were committed in a single evening but no evidence showed intent to engage in criminal activity beyond that criminal episode); *Arredondo*, 270 S.W.3d at 683 (holding proof of numerous crimes by several people at a party was insufficient to show crimes were more than single criminal episode).

In the case at hand, the State presented evidence that Appellant, Pharis, and several other people were involved in a fight at a bar. When the bar closed, Appellant, Pharis, and Holmes left in a white extended cab Chevrolet Z-71 pickup. Appellant was in the front passenger seat. Appellant and Pharis were both "mad" about what had happened at the bar, so the trio went to

Appellant's house and "someone" got Appellant's rifle. They returned to the bar, where Appellant leaned out of the passenger side of the vehicle and fired three or four shots towards the bar. They then traveled to the residence of Jose Estrada, Sr., and Appellant fired three or four shots towards the house. Pharis testified that he believed Appellant was aiming at the house and that he believed someone involved in the bar fight had some "relationship" to the house. The shots were fired at approximately 2:30 a.m. while Estrada Sr. and other family members were inside.

The State did not introduce any evidence that showed Appellant, Pharis, and Holmes intended to engage in any further criminal activity. Instead, the evidence showed that the gunshots were a spontaneous, angry reaction to the fight at the bar and part of the same criminal episode. *See Ross*, 9 S.W.3d at 882. Under these circumstances, the evidence does not give rise to a reasonable inference of an agreement as to continuity. *See id*. Because the State has not proved this element of engaging in organized criminal activity, we hold that the evidence is legally insufficient to support his conviction of that crime. *See id*. Therefore, we sustain Appellant's first issue as it pertains to this conviction.

**Deadly Conduct**

Viewing the evidence in the light most favorable to the verdict on the deadly conduct charge, the record shows that the shooting at 919 North Esplanade occurred at approximately 2:30 a.m. on July 3, 2010. The record also shows that when Appellant left the bar, he was angry about the fight that included him, Estrada, Jr., and others. Other evidence shows that Appellant was a passenger in the white extended cab Chevrolet pickup at the time the shooting occurred at the bar and that police officers removed Appellant from the pickup following the Esplanade shooting. Pharis identified Appellant as the shooter in both incidents and also testified that the rifle used in the shootings belonged to Appellant. Pharis further stated that he believed someone involved in the fight had a "relationship" to the house on Esplanade.

The evidence also shows that police officers found spent Wolf 7.62 shell casings at the Esplanade address, live and spent Wolf 7.62 cartridges in the bed and cab of the white extended cab pickup, and live Wolf 7.62 cartridges in Appellant's pocket when he was booked into jail. Pharis testified that they left the residence on Esplanade after the shooting but had not gone far when Appellant threw the rifle out the window. He also stated that, at the time, they were being

8

followed by a City of Palestine patrol vehicle. One of the officers found an SKS 762 semiautomatic rifle in a ditch along the route the group took when they left the Esplanade address. And finally, Appellant also made statements in the back of a patrol unit in which he admitted firing a weapon at someone.

From this evidence, the jury reasonably could have found that Appellant fired the shots at the residence on Esplanade and that he was aware that he was firing at a residence. The evidence also supports an inference that Appellant was aware of the risk that, at the time of the shooting (approximately 2:30 a.m.), the habitation was occupied but consciously disregarded that risk. Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the elements of deadly conduct beyond a reasonable doubt. Consequently, the evidence is legally sufficient to support the jury's verdict on the deadly conduct charge. We overrule the portion of Appellant's first issue pertaining to the deadly conduct conviction.

Because the evidence is legally sufficient to convict Appellant as a principal on the deadly conduct charge, we need not address Appellant's third argument that the evidence is legally insufficient to support his conviction as a party. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

We have sustained the portion of Appellant's first issue relating to his conviction for engaging in organized criminal activity. Accordingly, we *reverse* the judgment of the trial court on that conviction and *render* a judgment of acquittal. We *affirm* the trial court's judgment of conviction for deadly conduct.

JAMES T. WORTHEN
Chief Justice

Opinion delivered September 25, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)
9



# COURT OF APPEALS
## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
## JUDGMENT

### SEPTEMBER 25, 2013

### NO. 12-12-00236-CR

### ORLANDO LEE CASTILLO,
Appellant
V.
### THE STATE OF TEXAS,
Appellee

Appeal from the 3rd Judicial District Court

of Anderson County, Texas. (Tr.Ct.No. 30453)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in the judgment of the trial court, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment of conviction for engaging in organized criminal activity be **reversed** and a judgment of **acquittal** be **rendered** on that charge, that the judgment of conviction for deadly conduct be **affirmed**, and the same is, hereby entered herein in accordance with the opinion of this Court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*