**W.S. BARBER, B.S. Barber, and Jean C. Brown, Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 512–84.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 7, 1988.

Rehearing Denied Feb. 1, 1989.

---

Rex Houston, Henderson, for appellants.

Carter Beckworth, Dist. Atty., & John W. Tunnell & R. Clement Dunn, Asst. Dist. Attys., Longview, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

W.S. (Bull) Barber, B.S. (Buddy) Barber and Jean C. Brown were convicted by a jury of engaging in organized criminal activity. V.T.C.A., Penal Code, Section 71.02. The Texarkana Court of Appeals found the evidence insufficient to support the conviction and reversed. *Barber v. State*, 668 S.W.2d 424 (Tex.App.—Texarkana 1984). We disagree.

The statute provides:

"A person commits an offense if, with the intent to establish, maintain or participate in a combination or in the profits of a combination, he commits or conspires

to commit one or more of a [series of enumerated offenses, including theft]." V.T.C.A., Penal Code, Section 71.02(a). A combination is defined as "five or more persons who collaborate in carrying on criminal activities." Section 71.01(a).

We adopt the summary of the evidence by the Court of Appeals. For our purposes, it will suffice to say that the underlying offense was an ongoing scheme to steal crude oil. Originally ten co-defendants, including the appellants, were indicted together for this offense. At the beginning of a joint trial for all the co-defendants the trial court deleted three of those names from the indictment. At the end of the State's case the trial court directed verdicts in favor of two more co-defendants. So when the case went to the jury, only five co-defendants remained. Five is the minimum number that can form a criminal combination under the statute, though the five need not consist only of the defendant or defendants at trial.

The combination could have been proven to be composed of five members not limited to the defendants on trial. That would have been permissible. V.T.C.A., Penal Code, Section 71.01(a)(2). Here, however, the charge was very specific. The charge concerning W.S. Barber is representative:

"If you believe from the evidence beyond a reasonable doubt that W.S. (Bull) Barber did, in Gregg County, Texas, on or about January 31, 1980,

"(1) with intent to establish, maintain or participate in a combination or in the profits of the alleged combination (sic) *consisting of Jean C. Brown, W.S. (Bull) Barber, B.S. (Buddy) Barber, Bob Cunningham, and Wade Navarre,* intentionally or knowingly agree with Jean C. Brown, B.S. (Buddy) Barber, Bob Cunningham, and Wade Navarre, that one or more of them would engage in conduct that would constitute the offense of theft of crude oil of the value of more than $10,000; and

"(2) further that W.S. (Bull) Barber and one or more of the other defendants did perform an overt act named in the indictment and in pursuance of the origi-

nal agreement then you will find the defendant, W.S. (Bull) Barber, guilty."

The charge sets out the only possible combination the jury could find had been formed, one consisting of the five co-defendants. The jury was therefore authorized to find only that specific combination had been formed. The jury returned a finding of guilty as to W.S. Barber, B.S. Barber and Jean Brown. Wade Navarre and Bob Cunningham were acquitted.

In the instant case, the Court of Appeals found that the evidence was sufficient to connect W.S. Barber, B.S. Barber and Jean Brown to the theft of crude oil, but that there was insufficient evidence to establish beyond a reasonable doubt that all three appellants "participated in a combination with Bob Cunningham and Wade Navarre to commit or conspire to commit theft." In other words, the Court of Appeals found the evidence insufficient to establish the existence of the underlying combination due to the acquittal of Cunningham and Navarre. Therefore, the question that must be answered is: When a jury is charged that only five actors formed a criminal combination, and those five are tried jointly, can the convictions of any of the defendants stand if one or more is acquitted? We answer that question in the affirmative.

At the outset it is important to note the distinctions between prosecutions under V.T.C.A., Penal Code, Section 15.02, criminal conspiracy, and V.T.C.A., Penal Code, Section 71.02, organized criminal activity. In Texas, the rule in criminal conspiracy prosecutions is that one or more persons must conspire to commit an offense and then perform some overt act in furtherance of the conspiracy. One person acting alone cannot commit conspiracy. Section 15.02, supra. The rule has evolved that, "inasmuch as two persons are necessary to a conspiracy, if two are tried and one is acquitted, the other must also be acquitted." *Hustead v. State,* 95 Tex.Cr.R. 49, 251 S.W. 1074 (1923). The same rule inheres in cases of civil liability for conspiracy. *Barbier v. Barry,* 345 S.W.2d 557 (Tex.Civ.App.–Dallas 1961, no writ).

■ There is, however, an important difference between the conspiracy and organized criminal activity statutes besides the number of participants. To be guilty of the offense of organized criminal activity an actor must commit or conspire to commit one or more of the enumerated crimes, with the specific intent of participating in a criminal group of at least five persons. The statute also defines "conspires to commit:"

" 'Conspires to commit' means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and *that person and* one or more of them perform some overt act in pursuance of the agreement." Section 71.-01(b), supra.

It is in this paragraph that the statute diverges from the criminal conspiracy statute, Section 15.02, supra, which holds a person guilty if:

"he agrees with *one or more persons* that they or one or more of them engage in conduct that would constitute the offense; *and*

"(2) he *or* one or more of them performs an overt act in pursuance of the agreement."

■ A person may be guilty of criminal conspiracy by doing nothing more than agreeing to participate in the conspiracy, as long as another conspirator commits some overt act in furtherance of the conspiracy. But to commit the offense of engaging in organized criminal activity, the actor must not only agree to participate but must himself perform some overt act in pursuance of that agreement. Guilt requires two ingredients: (1) intent to participate in a criminal combination, and (2) the defendant's performing some act, not necessarily criminal in itself, in furtherance of the agreement. It is therefore possible that five people could form a combination to engage in organized criminal activity, that

three of them would be guilty of the crime in that they did some act in furtherance of the criminal scheme, while the remaining members would not be guilty because they performed no overt acts in aid of the criminal combination.[1]

It is possible for the State to try five co-defendants who are the only alleged members of the criminal combination, and the evidence support convictions of only three of the co-defendants and acquittal of two. Committing organized criminal activity requires five or more participants. It does not require five convictions, even if the five are tried in the same trial.

With the above analysis in mind, we turn to the question of the sufficiency of the evidence to establish the criminal combination. In *Benson v. State*, 661 S.W.2d 708, 715 (Tex.Cr.App.1982) (on motion for rehearing), this Court stated:

"[W]hen a charge is correct for the theory of the case presented we review the sufficiency of the evidence in a light most favorable to the verdict by comparing the evidence to the indictment as incorporated into the charge."

Given the court's charge to the jury in the instant case, in reviewing the sufficiency of the evidence we are restrained from going outside the five defendants remaining at the close of the case to find a combination.

In reviewing the sufficiency of the evidence, an appellate court should look at the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App.1983); *Acevedo v. State*, 633 S.W.2d 856 (Tex.Cr.App.1982). The standard for such review on appeal is the same for both direct and circumstantial evidence. *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983) (opinion on rehearing); *Denby v. State*, 654 S.W.2d 457 (Tex.Cr.

---

1. By the same reasoning, it logically follows that one person could serve as the organizer of four or more others and that "ring leader" could alone be found guilty. It would not be necessary for the other co-conspirators to have committed an overt act, or even to have known of each others' existence. The fact that the ring leader (1) intended to participate in a criminal combination, and (2) performed the overt act of soliciting and organizing others in furtherance of the combination, would be sufficient to support his conviction under Section 71.02(a).

App.1983) (opinion on rehearing); *Freeman v. State*, 654 S.W.2d 450 (Tex.Cr.App.1983) (opinion on rehearing). In making that determination in a circumstantial evidence case, we must also employ the "exclusion of outstanding reasonable hypothesis" analysis. *Carlsen v. State*, supra.

■ Wade Navarre[2] was the apparent "money man" in the deal, getting a $100,000 loan for an unspecified East Texas oil deal. At some point he was introduced to Jean Brown and "Bull" Barber. Navarre next appears with Brown in leasing the Creek Terminal property, the site where at least some of the stolen oil was stored for later shipment. Telephone records show that calls were placed later, during the operational phase of the scheme, between a number listed in Navarre's name and those of Creek Terminal and Barber Well Service.

Jean Brown, nominally the sole proprietor of Creek Terminal, set up operations at the facility with the help of Navarre, W.S. Barber and Bob Cunningham, the first "manager" of the facility. The property was leased, storage tanks were moved onto the property from W.S. Barber's farm, trucks were purchased, drivers were hired and directed, bank accounts were opened, agreements for the sale of oil were made and "run tickets" showing transport and sale of oil were signed by Brown. She sent letters of authorization naming Bob Cunningham, among others, to draw on the accounts. Brown was seen in the company of the other defendants and on one occasion depended upon W.S. Barber to provide pipe connections for the facility.

Bob Cunningham was the first manager of the facility. Along with one of the drivers, Tim Jones, Cunningham set up the storage tanks at the Creek Terminal.

W.S. "Bull" Barber provided assistance by procuring connections and ordering telephone service for Creek Terminal. Bull and his son, B.S. "Buddy" Barber, also contacted a Railroad Commission investigator and offered a bribe of one dollar per barrel of "hot oil" in return for information regarding the whereabouts of Railroad Commission agents in the East Texas fields. The Barbers were aware at the time the offer was made that an investigation was going on concerning the movement of "hot" oil and that Creek Terminal activity was being closely monitored.

"Buddy" Barber, in addition to the attempted bribe of the Railroad Commission investigator, was placed at the scene of some of the "hot" oil movements where his apparent role was to act as look out when the transports were loaded. Access to these leases where the loading was done was procured by bribing a pumper—the man responsible for servicing the leases. Buddy was also the recipient of a large check drawn on the account of Creek Terminal.

Section 71.01(a), supra, defines "combination" as "five or more persons who collaborate in carrying on criminal activity." However, nowhere in the statutes does a definition of "collaborate" appear. Turning to caselaw, we find the lower courts have formulated a workable definition of "collaborates," viz: "working together with a specified number of others in specified criminal activities." *Abbett v. State*, 694 S.W.2d 534 (Tex.App.–Corpus Christi 1984, pet. granted); *Lucario v. State*, 677 S.W.2d 693 (Tex.App.–Houston [1st Dist.] 1984). Applying this analysis, we find the evidence sufficient to establish a combination within the meaning of Section 71.01, supra. The record reflects that Navarre became acquainted with W.S. Barber and Jean Brown and shortly thereafter the

---

2. In their briefs, the appellants correctly note that the overt acts of acquitted co-conspirators cannot be used in establishing the guilt of their co-defendants. While we do not question the soundness of that rule as applied to criminal conspiracy statutes, we find a valid distinction in regards to organized criminal activity. Evidence of the acts of other individuals should be admissible in demonstrating the existence of the underlying criminal combination. This is true whether the other individuals were acquitted by trial or appeal, or were never even the subject of prosecution. We find this reasoning does not run afoul of the general rule since proof of a combination is not determinative of guilt. Once the underlying combination is established, the guilt of any one party depends upon the intent and overt acts of *that particular individual.*

three, along with Bob Cunningham, were involved in setting up Creek Terminal as a working operation. B.S. Barber participated in the theft of oil from several leases, that oil being transported and stored at the Creek Terminal facility. After the investigation heated up, W.S. and B.S. Barber attempted to bribe a representative of the Railroad Commission to provide information to facilitate "hot" oil movements.

While Navarre's conduct may not directly demonstrate ongoing participation in the combination or show commission of an overt act necessary for his conviction of the offense, his actions helped to establish a group to carry on the illegal activities. Brown and W.S. Barber also acted in the establishment of the combination, and the record reflects ongoing participation in the combination through their respective roles in the oil movement scheme. B.S. Barber's conduct also demonstrates active participation in the combination. All five of the individuals whose guilt was finally determined by the jury were involved in the type of operation that required an organized, coherent effort by the parties concerned. The scheme was large enough in scope reasonably to require at least five persons' involvement.[3] The jury had sufficient evidence before it to justify the verdict reached beyond a reasonable doubt. Given all the circumstances and intertwined acts of appellants, we find that the evidence supports only the reasonable hypothesis of appellants' guilt. Each of the three appellants had either the intent to establish, maintain or participate in a combination or in the profits of said combination; their agreement being demonstrated by their individual acts in setting up and maintaining and attempting to protect the scheme from discovery. *Farrington v. State,* 489 S.W. 2d 607 (Tex.Cr.App.1972); see also, *Ken-*

*nard v. State,* 649 S.W.2d 752 (Tex.App.– Fort Worth 1983, pet. ref'd).

In light of all the evidence in the record, some of which was not included in the Court of Appeals' summary, there is sufficient evidence to support the allegations that a combination was formed and operated during the continuing oil movement scheme. The combination established, the evidence also reflects that each appellant conspired to commit the offense of theft as charged in the indictment.

The judgment of the Court of Appeals is vacated and the cause is remanded to that court for consideration of appellants' remaining points of error.

ONION, P.J., DAVIS and WHITE, JJ., and JOHN E. CLARK, Special Judge,[4] join in this opinion.

CLINTON, Judge, dissenting.

The Texarkana Court of Appeals concluded that the evidence in this cause "fails to establish beyond a reasonable doubt that W.S. Barber, B.S. Barber, and Jean Brown *participated in a combination* with Bob Cunningham and Wade Navarre *to commit or conspire to commit theft.*"[1] It is apparent to me that neither the court of appeals in its opinion, nor the majority now, seems able to discern any difference between the "combination," which the accused must act "with intent to establish, maintain, or participate in," and the actual commission of or conspiracy to commit one of the offenses enumerated in V.T.C.A. Penal Code, § 71.02(a)(1)–(7). The plain fact of the matter is that the purpose of the "combination" need not be to facilitate the commission or conspiracy to commit the enumerated offense; rather, that offense must be committed or contemplated with a mind toward facilitating the already existing "combination"—those "five or more

---

**3.** The record reflects that many more than five ultimate defendants were involved in the scheme. The lease pumper and truck drivers were given immunity and several other original defendants were dropped from the indictment for one reason or another.

**4.** John E. Clark, former Justice of the Fourth Court of Appeals at San Antonio, was appointed

as Special Judge of the Court of Criminal Appeals in this cause by the Honorable William P. Clements, Governor of Texas, in view of the disqualification of Judge Charles F. (Chuck) Campbell, who was a special prosecutor in the trial of this cause.

**1.** All emphasis supplied unless otherwise indicated.

persons who collaborate in carrying on criminal activities" *in general*.[2] Operating under this shared misapprehension of the import of the statute, the court of appeals and a majority of this Court nevertheless reach contrary conclusions as to whether the evidence was sufficient for a rational jury to convict.

Along the way the majority concludes that it is unnecessary to convict all "five or more persons" charged collectively with organized criminal activity in order to convict any single one of them. See generally V.T.C.A. Penal Code, § 71.03. I could not agree more with this proposition had I written it myself. For an accused to be convicted under Chapter 71 of the Penal Code, it must be shown that: 1) at the time of his guilty conduct there existed a criminal combination; and, either 2) he committed one of the offenses enumerated in § 71.02(a)(1)–(7), supra, or 3) he agreed with one or more people to commit one of the enumerated offenses, and he *and* one or more of those with whom he agreed performed an overt act in pursuance of the agreement; and 4) that he specifically intended thereby "to establish, maintain, or participate in" the combination or in its profits. That all alleged members of the combination did not either commit or conspire to commit one of the enumerated offenses cannot insulate those members who *did* from prosecution and conviction.

However, in footnote 1 the majority develops a corollary it believes "logically follows" from this proposition that to my way of thinking is neither "logical" nor faithful to the clear statutory formula. Judge McCormick there concludes, without benefit of exegesis:

"that one person could serve as the organizer of four or more others and that 'ringleader' could alone be found guilty. It would not be necessary for *the other*

*co-conspirators to have committed an overt act*, or even to have known of each others' existence. The fact that the ring leader (1) intended to participate in a criminal combination, and (2) performed the overt act of *soliciting and organizing others in furtherance of the combination*, would be sufficient to support his conviction under Section 71.02(a)."

Maj.Op. at p. 225. Two misconceptions seem evident to me from this conclusion. First, at least when the theory of prosecution is that the accused "conspired to commit" one of the offenses listed in § 71.02, supra, he *"and* one or more" co-conspirators must be found to have performed an overt act—*not* the accused alone. But more fundamentally, as I have already noted, the majority fails to recognize that the statute differentiates between the general "criminal activities," which are the *raison d'etre* of the combination, and the particular offense under § 71.02, supra, which the accused must be found to have committed or conspired to commit with the requisite intent to facilitate that combination. "[S]oliciting and organizing others in furtherance of the combination" is simply not an "overt act" pursuant to the "agreement" contemplated by the statute.

This second misconception forms an integral basis of the majority's belief that the evidence was sufficient to support the conviction in this cause:

"Each of the three appellants had either the intent to establish, maintain or participate in a combination or in the profits of said combination; *their agreement being demonstrated by their individual acts in setting up and maintaining and attempting to protect the scheme from discovery*."

Maj.Op. at p. 227. Here again the majority seems to confuse "agreement" with "com-

2. Apparently unlike the majority, I do not understand "intent to establish" to be synonymous with intent to *form* a criminal combination. Although one definition of "establish" reads: "4 a: to bring into existence: FOUND ... b: to bring about: EFFECT[,]" more likely in the context of § 71.02(a), supra, the word denotes: "1: to make firm or stable ... 5 a: to set on a firm basis ... b: to put into a favorable position[.]"

Websters New Collegiate Dictionary (1979). To hold otherwise would lead to the absurd result that one person acting alone could engage in organized criminal activity as long as when he actually committed one of the enumerated offenses he harbored some vague intention of putting together a combination at a later date, though he had not yet done so.

bination." However, while "agreement" goes to the culpable act of the accused, "combination" is part and parcel of the requisite accompanying mental state—the specific intent. Before it can be said that the accused "conspired to commit"—that is, that he, *inter alia,* "agreed" to commit —one of the enumerated offenses with the specific intent "to establish, maintain, or participate in a combination[,]" the combination must already have been in existence. Surely what is contemplated by V.T.C.A. Penal Code, § 71.01(b) is not an "agreement" to form the combination in the first instance! See note 2, *ante.*

I cannot subscribe to resolution of the sufficiency issue in this cause under such a muddled construction of the applicable statutes.

The majority would also measure sufficiency of the evidence against a jury charge that is "correct for the theory of the case presented[.]" See *Benson v. State,* 661 S.W.2d 708, 715 (Tex.Cr.App. 1982) (On State's motion for rehearing). Whatever this language means, I had thought the Court had since abandoned that particular prerequisite to measuring sufficiency of the evidence according to the charge. See *Fain v. State,* 725 S.W.2d 200 (Tex.Cr.App.1986) (Clinton, J., concurring and dissenting); *Marras v. State,* 741 S.W.2d 395 (Tex.Cr.App.1987) (Clinton, J., concurring). At any rate, the majority then concludes "there is sufficient evidence to support *the allegations* that a combination was formed ..." Maj.Op. at p. 227. This Court measures sufficiency of the evidence by the charge that is given to the jury, not by "the allegations." E.g., *Boozer v. State,* 717 S.W.2d 608 (Tex.Cr.App. 1984).

To compounding confusion where we should be casting light, I dissent.

TEAGUE, MILLER and DUNCAN, JJ., join this opinion.