ACCEPTED
03-14-00584-CR
3906725
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/26/2015 9:29:09 PM
JEFFREY D. KYLE
CLERK

## No. 03-14-00584-CR

_____

# IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/26/2015 9:29:09 PM
JEFFREY D. KYLE
Clerk

_____

STEWART LINDSAY SHERROD, Appellant

v.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 207th Judicial District Court of Comal County, Texas
Cause No. CR2010-105
Honorable Dib Waldrip, District Judge Presiding

_____

## BRIEF FOR THE STATE

_____

**Jennifer Tharp**
**Criminal District Attorney**

**By**
**Joshua D. Presley**
**SBN: 24088254**
**Assistant District Attorney**
**150 N. Seguin Avenue, Suite #307**
**(830) 221-1300**
**Fax (830) 608-2008**
**New Braunfels, Texas 78130**
**E-mail: preslj@co.comal.tx.us**
**Attorney for the State**

## Oral Argument Is Requested

## Identity of Parties and Counsel

### Attorneys for the Appellant Stewart Lindsay Sherrod

**AT TRIAL & ON APPEAL**
Paul A. Finley
401 Main Plaza, Suite 200
New Braunfels, Texas 78130
Telephone: (830) 625-8026
Facsimile: (830) 625-4433
Email: pfinley@reaganburrus.com


### Attorneys for the Appellee, The State of Texas

**AT TRIAL**
Sammy McCrary
Chief Felony Prosecutor
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
Telephone: (830) 221-1300
Facsimile: (830) 608-2008
Email: mccras@co.comal.tx.us

**ON APPEAL**
Joshua D. Presley
Assistant District Attorney
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
Telephone: (830) 221-1300
Facsimile: (830) 608-2008
Email: preslj@co.comal.tx.us

# Table of Contents

Index of Authorities ........................................................................................ iv

Statement of Facts ............................................................................................1

**The Evidence Was Legally Sufficient to Prove Appellant Committed the Offense of Forgery** .......................................................................................4

      Summary of the Argument...................................................................4

      *Standard of Review*............................................................................5

      Argument.............................................................................................8

**The Evidence Was Legally Sufficient to Prove Appellant Committed the Offense of Engaging in Organized Criminal Activity** ..............................12

      Summary of the Argument.................................................................12

      *Standard of Review*..........................................................................13

      Argument...........................................................................................14

**Appellant Has Not Preserved Error Related to the Admission of Evidence**..........................................................................................................18

      Summary of the Argument.................................................................18

      Argument...........................................................................................18

Prayer ..............................................................................................................24

Certificate of Service ......................................................................................25

Certificate of Compliance ...............................................................................26

# Index of Authorities

## Statutes & Rules

Tex. Pen. Code Ann. § 32.21 ..................................................................6, 7

Tex. Pen. Code Ann. § 71.02 ...................................................................13

Tex. R. App. P. 33.1...................................................................................19

Tex. R. App. P. 44.2(b) ..............................................................................21

## Cases

*Barber v. State*, 764 S.W.2d 232 (Tex. Crim. App. 1988) ................................13, 14

*Casey v. State*, 215 S.W.3d 870 (Tex. Crim. App. 2007)........................................21

*Ervin v. State,* 331 S.W.3d 49 (Tex. App.—Houston
[1st Dist.] 2010, pet. ref'd)...................................................................................5

*Geick v. State*, 349 S.W.3d 542 (Tex. Crim. App. 2011) ..........................................6

*Gonzales v. State*, 685 S.W.2d 47 (Tex. Crim. App. 1985)....................................19

*Harnett v. State*, 38 S.W.3d 650 (Tex. App.—Austin 2000,
pet. ref'd).................................................................................................19, 22

*Jackson v. Virginia*, 443 U.S. 307 (1979)............................................................5, 7

*Jimenez v. State*, 804 S.W.2d 334 (Tex. App.—San
Antonio 1991, pet. ref'd) ...................................................................................5, 7

*Johnson v. State*, 84 S.W.3d 726 (Tex.App.-Houston
[1st Dist.] 2002, pet. ref'd)...............................................................................5, 7

*Klapesky v. State*, 256 S.W.3d 442 (Tex. App.—Austin
2008, pet. ref'd) ...............................................................................................20

*Kiffe v. State*, 361 S.W.3d 104 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd)........................................5, 6, 7, 9, 11, 12, 17

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) .............................................6

*Margraves v. State*, 34 S.W.3d 912 (Tex. Crim. App. 2000)............................8, 9, 15

*Moody v. State*, 827 S.W.2d 875 (Tex. Crim. App. 1992) .......................................20

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)..................................21, 23

*Nguyen v. State*, 1 S.W.3d 694 (Tex. Crim. App. 1999) ...........................................13

*Pearce v. State*, 10-12-00353-CR, 2014 WL 942687 (Tex. App.—Waco Jan. 16, 2014, no pet.) (mem. op., not designated for publication) ...................................................................7

*Richards v. State*, 912 S.W.2d 374 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd) ...................................................22

*Ross v. State,* 9 S.W.3d 878 (Tex. App.—Austin 2000, pet. ref'd)...................................................................................16, 17

*Rucker v. State*, 13-12-00657-CR, 2013 WL 6730172 (Tex. App.—Corpus Christi Dec. 19, 2013, pet. ref'd) (mem. op., not designated for publication) ....................................................21, 22

*Scruggs v. State*, 782 S.W.2d 499 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd)................................................................19, 20

*Shores v. State*, 54 S.W.3d 456 (Tex. App.—Texarkana 2001, pet. ref'd) .................................................................................13

*Webb v. State*, 760 S.W.2d 263 (Tex. Crim. App. 1988) .......................................18

*Williams v. State,* 688 S.W.2d 486 (Tex. Crim. App. 1985) ...............................7, 11

v

## Statement of Facts

The Appellant, Stewart Lindsay Sherrod, met Steven Hargrove about six months before October 8, 2009. RR vol. 3 at 83. Hargrove had been in trouble in Kingsland for forging checks. *Id*. at 84. Appellant met Hargrove's girlfriend, Misti McMain, a month or two before October 8th. *Id*. at 83. McMain was a teller at the Blanco Bank in Bulverde. *Id*. at 84. McMain testified that Appellant and Hargrove asked her for an account number so they could make checks. *Id*. at 72, 76. McMain said she gave them the account number for HPS Concrete because "it held a lot of money." *Id*. at 72.

Appellant went to a club with his girlfriend, Tammy Schroeder, in the middle of September, 2009. *Id*. at 61. While at the club, Appellant played cards with Patrick Manning. *Id*. at 66. Appellant observed that Manning appeared to be drunk. *Id*. at 89. Later that night in the parking lot, Manning was mugged; someone hit him in the head and stole his wallet and money. *Id*. at 61, 66.

Around September and October of 2009, Schroeder was unhappy with Appellant because he had stolen from her. *Id*. at 65-66. Nevertheless, she allowed him to drive her vehicle, a silver-blue BMW X3. *Id*. at 60-61. On September 28, 2009, Appellant and Hargrove drove to the Blanco Bank in Schroeder's BMW. *Id*. at 84.

1

The teller that day, Travis Walker, knew Hargrove. *Id*. at 36-37. They had been in school together, where Hargrove was one grade ahead of Walker. *Id*. However, Walker testified that he did not see Hargrove on September 28th. *Id*. at 36, 41-42. Walker testified that Appellant passed him a check which appeared to be from "HPS Concrete" to "Patrick Manning" in the amount of $8,522.53. *Id*. at 41, 36; CR at 7, 10, 12. Walker also testified that when unknown customers came through to cash a check, he identified them with their driver's license. RR vol. 3 at 32-33. After the check was successfully cashed, Appellant said he took at least $1,200 of the money, despite knowing the check was forged. *Id*. at 84, 85.

Just over a week later, on October 7th, 2009, McMain and Hargrove came over to spend the night with Appellant at his girlfriend's house. *Id*. at 63. On the morning of October 8th, as Schroeder was getting ready to go to work, she saw Appellant and Hargrove outside in the shed. *Id*. at 64. They had a computer and printer, and were printing something out. *Id*.

Later that morning, Appellant and Hargrove drove to the same Blanco Bank in Bulverde. *Id*. at 45-46. Although Walker was at the bank, the teller handling their drive-through lane was Sheri Posey. *Id*. at 44-46. Appellant was driving a Ford Explorer, while Hargrove was lying down – out of view – in the backseat. *Id*. at 46, 40, 42, 54; State's Exhibit 9 at 11:59:00. Appellant passed a check to Posey which purported to be from "Brookshire Brothers, Limited" to "Patrick Manning"

2

in the amount of $7,532.76, along with Patrick Manning's driver's license. *Id*. at 16-17, 45-46, 55; CR at 18, 22. Posey testified that she realized it was the same people who had already passed a forged check; she informed Walker and her manager, who told her to stall them. *Id*. at 46. When Posey asked where Appellant was employed, he said he worked at Brookshire's as an electrician. *Id*. at 47. Meanwhile, Walker went outside to get in a truck and block Appellant in. *Id*. at 34.

Detective Gary Edwards responded to the radio call. *Id*. at 52. When he arrived, Edwards parked in front of Appellant's Ford Explorer. *Id*. at 52-53; State's Exhibit 8 at 11:35:25. Edwards ordered Appellant – the driver – out of the car and onto the ground. *Id*. at 53. Edwards did not realize Hargrove was lying down out of view in the backseat. *Id*. As Edwards handcuffed Appellant on the left side of the Explorer, Hargrove bolted out of the SUV's right side and ran up a hill. State's Exhibit 8 at 11:35:45; RR vol. 3 at 40. Hargrove was forced to stop fleeing at gunpoint by a citizen who was a concealed handgun carrier. RR vol. 3 at 54.

Appellant plead guilty to Counts III and IV of the indictment, related to the passing and making of the Brookshire Brother's check on October 8, 2009. *Id*. at 16-17. He pled not guilty to the counts related to making and passing the September 28th check, and to Count V, the Engaging in Organized Criminal Activity charge. *Id*. at 15-16, 17-18. McMain later testified that she pled guilty to a

charge of Engaging in Organized Criminal Activity for engaging with Appellant and Hargrove to commit forgery. *Id*. at 73.

## The Evidence Was Legally Sufficient to Prove Appellant Committed the Offense of Forgery

Because Appellant's conviction for Forgery by Passing supports his conviction for Engaging in Organized Criminal Activity, the State will address Appellant's second issue first. The following Standard of Review is relevant to both Appellant's second and first issue on appeal.

## <u>Summary of the Argument</u>

In his second point of error, Appellant contends the evidence was legally and factually insufficient to prove he committed the offense of Forgery as alleged in Count I of the indictment. *See* Brief for Appellant at 12. The State put forth legally sufficient evidence to prove Appellant's guilt. The jury could reasonably conclude that Appellant passed the check on September 28th based on evidence including Appellant's admission he was in the car, that he took at least $1,200 of the $8,000 knowing the check had been forged, direct testimony indicating Appellant – and not Hargrove, whom the teller would have recognized – passed the check, and the fact that Appellant passed the later check on October 8th while Hargrove hid in the

4

back seat. Similarly, there was abundant evidence that Appellant knew the check was forged when he passed it, including the fact that he knew Hargrove was in trouble for forgery, Appellant used a stolen driver's license to cash the $8,000 check and McMain's testimony established that Appellant asked her for the HPS account number to make the checks. Alternatively, even if Hargrove passed the check on September 28th as Appellant claimed, the evidence was legally sufficient to uphold Appellant's conviction as a party to the offense.

### *Standard of Review*

After the decision of the Court of Criminal Appeals in *Brooks v. State*, Texas appellate courts review legal and factual sufficiency challenges in criminal cases using the same legal sufficiency standard of review. *Kiffe v. State*, 361 S.W.3d 104, 107 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Ervin v. State,* 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)). Evidence is only insufficient if, when considering all the evidence in the light most favorable to the verdict, "no rational factfinder could have found each essential element of the charged offense beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). While viewing the evidence in the light most favorable to the verdict, evidence can be insufficient in two circumstances: when the record contains "no evidence, or merely a 'modicum' of evidence, probative of an

element of the offense" **or** when "the evidence conclusively establishes a reasonable doubt." *Id*. The evidence may also be insufficient when the acts alleged do not constitute the offense charged. *Id*. at 108.

To determine "the essential elements of the crime," courts will look to "the hypothetically correct jury charge for the case." *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Geick,* 349 S.W.3d at 545 (quoting *Malik*, 953 S.W.2d at 240). When there has been no notice-based motion to quash, a charging instrument is only required to allege the statutory elements of the offense. *See Geick,* 249 S.W.3d at 546.

The elements of forgery are that the defendant forges a writing with intent to defraud or harm another. Tex. Pen. Code Ann. § 32.21 (West, Westlaw through 2013 Sess.). "Forge" means – among other things – to make a writing so that it purports:

(i) to be the act of another who did not authorize that act;

(ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or

(iii) to be a copy of an original when no such original existed;

6

**or** to pass such a writing with intent to defraud or harm another. *Id.* "Intent to defraud or harm may be inferred from proof the defendant knew the instrument was forged." *Pearce v. State*, 10-12-00353-CR, 2014 WL 942687, at *7 (Tex. App.—Waco Jan. 16, 2014, no pet.) (mem. op., not designated for publication) (citing *Williams v. State,* 688 S.W.2d 486, 488 (Tex. Crim. App. 1985)). "Intent to defraud or harm may be established by circumstantial evidence." *Id.* (citing *Williams,* 688 S.W.2d at 488).

Legal sufficiency review "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. at 319. Reviewing courts determine whether the necessary inferences are reasonable based on the "combined and cumulative force of the evidence when viewed in the light most favorable to the verdict." *Kiffe*, 361 S.W.3d at 108. Courts will treat direct and circumstantial evidence equally. *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* Appellate courts will presume that the factfinder "resolved any conflicting inferences in favor of the verdict" and defer to that resolution. *Id.* The reviewing courts will also defer to "the factfinder's evaluation of the credibility and the weight of the evidence." *Id.* The factfinder is entitled accept some testimony and reject other testimony, in

7

whole or in part. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), abrogated on other grounds by *Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009).

## Argument

There is more than a modicum of evidence to prove each element of Appellant's offense, and no evidence conclusively establishes a reasonable doubt. *See Kiffe*, 361 S.W.3d at 107. Furthermore, the acts alleged constitute the offense of forgery. *See id*. First, there is legally sufficient evidence indicating Appellant passed the check on September 28, 2009 as alleged in Count I of the indictment.

Appellant admitted being present in the car when the first check was passed at the drive-through bank lane on September 28, 2009. RR vol. 3 at 84. Although in his written statement the Appellant also claimed Hargrove drove the car and passed the check, the jury was free to believe part of his statement and reject other parts. *Id*. at 84, 82, 86 (where officer Steve Simpson noted Appellant changed his story and lied between giving his statement on video and his later written statement); *see also Margraves*, 34 S.W.3d at 919. The car Appellant and Hargrove used for the September 28th forgery was Appellant's girlfriend's BMW X3, which she allowed *Appellant* to drive. RR vol. 3 at 60, 84.

Travis Walker – the bank teller to whom the September 28th forgery was passed – identified Appellant as the driver and passer of the check on that day. *Id*.

8

at 35-36, 41-42; RR vol. 5 at 12.[1] Additionally, Walker knew Hargrove from school. RR vol. 3 at 36-37. Walker did not know if Hargrove was in the car on September 28th. *Id*. Walker testified that Hargrove could not have been the driver that day, because Walker would have recognized Hargrove was not "Patrick Manning" listed on the stolen driver's license. *Id*. at 41-42.[2]

Walker's assertion that he would have recognized Hargrove is supported by the facts of the October 8th forgery. Appellant drove the car and passed the check on that date. *Id*. at 16-17, 53. Hargrove was hiding in the back seat and fled while the officer handcuffed Appellant. *Id*. at 42, 54; State's Exhibit 9 at 11:59:00 (where Appellant states Hargrove "was laying in the backseat when [officers] drove up."). The jury could reasonably infer Hargrove was hiding to avoid being seen by Walker, whom he knew would recognize him. RR vol. 3 at 42. The jury could also infer that because Hargrove had to hide while Appellant passed the check on October 8th, this same procedure was followed during the earlier September 28th

---

[1] Appellant stresses Detective Simpson's report, which indicated Walker identified Appellant as a 'passenger' of the vehicle on September 28th. Brief for Appellant at 12. However, the Detective emphasized that he might have misunderstood Walker, and that he wrote his report as the "last thing [he] did after the fact." RR vol. 3 at 91. Likewise, the jury was entitled to believe Walker's confident identification testimony (*see, e.g., id*. at 43, 41-42) over what the Detective admitted was a possibly mistaken report written at the end of his investigation and the Detective's impression of another officer's report. *Id*. at 101, 103.

[2] Appellant notes the Detective testified he could not make out *any person* in the photographs of the vehicle on September 28th. Brief for Appellant at 12. However, the Detective was referring to "the photographs [he] had to work with" which were black-and-white and appeared fuzzy; they were not identical to the view Walker would have had. RR vol. 3 at 95, 102-03. Because Walker testified that he could distinguish *facial features* – he recognized Appellant and would have recognized Hargrove – and because Hargrove hid on October 8th, the jury could infer that Walker had a clearer view of Appellant. *See id*. at 42.

9

forgery. This is reinforced by the fact that Walker did not see Hargrove when Appellant passed the check on September 28th, despite the fact that Appellant's statement said Hargrove was in the vehicle. When viewed in the light most favorable to the verdict, there was legally sufficient circumstantial and direct evidence that Appellant passed the check on September 28th.

Next, there was ample evidence from which the jury could infer Appellant knew the check he passed on September 28th was forged. In Appellant's written statement, he admitted knowing Hargrove was in "some kind of trouble in Kingsland for forging some checks." RR vol. 3 at 84. Appellant played cards with Patrick Manning at the club just before Manning was mugged and his driver's license was stolen. *Id*. at 61, 66. Appellant attempted to use that same driver's license when he passed the second forged check on October 8th. *Id*. at 16-17, 48, 55; RR vol. 5 at 17-22; State's Exhibit 9 at 11:51:06. Appellant passed the first $8,000 check made out to "Patrick Manning" on September 28th using Manning's driver's license. *Supra* at 8-10; RR vol. 3 at 32-33, 41-42, 84. Appellant had previously stolen money from his girlfriend. RR vol. 3 at 65-66. Appellant admitted to taking $1,200 of the $8,000 even after he knew the check was forged. RR vol. 3 at 84-85.

In such circumstances, the jury reasonably inferred that Appellant knew the $8,000 check he passed on September 28th with someone else's stolen driver's

10

license – while Hargrove, in trouble for forgery, hid in the backseat – was forged. *See Williams*, 688 S.W.2d at 488. Over and above that strong circumstantial evidence, McMain testified that Appellant and Hargrove **both** pressured her for the account number of the HPS Concrete business, and that Appellant wanted the number to make the checks he later passed. *See* RR vol. 3 at 72, 76.[3]

Additionally, even if Hargrove had passed the first check as Appellant claimed, the State included a paragraph on party liability in the charge. CR at 103. The fact that Appellant encouraged McMain to provide the necessary account numbers, provided transportation via his girlfriend's BMW and obtained at least $1,200 of the funds for his assistance to Hargrove in the September 28th forgery would allow for Appellant's conviction as a party to the offense.

The inferences and conclusions of the jury were reasonable, particularly given the combined and cumulative force of the evidence. *See Kiffe*, 361 S.W.3d at 108. When viewed in the light most favorable to the verdict, the evidence at trial was legally sufficient to show Appellant passed the check on September 28th knowing it was forged. The Court should defer to the factfinder's evaluations of

---

[3] Appellant argues there was no testimony as to when the account number was given. The jury could reasonably infer from McMain's testimony that Appellant 'wanted' the number to make checks because he needed the number *before* he could make the checks. *Id*. at 76. It would be nonsensical for Appellant to 'pressure' and 'badger' McMain for the HPS Concrete account number *after* he had already succeeded in passing the HPS Concrete check *with the account number on it*. *See id*. at 72, 76; CR at 7.

credibility and weight of the evidence, as well as their resolution of conflicting inferences in favor of the verdict. *See Kiffe*, 361 S.W.3d at 108.

## The Evidence Was Legally Sufficient to Prove Appellant Committed the Offense of Engaging in Organized Criminal Activity

### Summary of the Argument

In his first issue, Appellant challenges the sufficiency of the evidence to prove he committed the offense of Engaging in Organized Criminal Activity. Brief for Appellant at 7. Appellant focuses on McMain's involvement in the combination and the element of continuity. When viewed in the light most favorable to the verdict, there was legally sufficient evidence of each element of the offense. In its role as the sole judge of the credibility and weight of the evidence, the jury was free to accept some parts of McMain's testimony and reject other parts, especially in light of her entire testimony and circumstantial evidence. Furthermore, Appellant's cited case of *Ross v. State* actually supports the jury's reasonable inference of the group's intent to work together in a continuing course of criminal activity in the circumstances of Appellant's case.

### *Standard of Review*

To avoid repetition, the aforementioned standard of review (*supra* at 5-8) for Appellant's second issue on appeal applies equally to his first issue. Additionally, the elements of Engaging in Organized Criminal Activity are that the defendant "with the intent to establish, maintain, or participate in a combination or in the profits of a combination" commits one or more of the offenses mentioned in the statute, including forgery. Tex. Pen. Code Ann. § 71.02 (West, Westlaw through 2013 Sess.).

The critical element in a criminal combination is continuity; that is, "three or more people agreed to work together in a continuing course of criminal activity." *Shores v. State*, 54 S.W.3d 456, 459 (Tex. App.—Texarkana 2001, pet. ref'd) (citing *Nguyen v. State*, 1 S.W.3d 694 (Tex. Crim. App. 1999)). The acts that prove continuity are not required to be criminal offenses themselves, but may be preparatory acts in furtherance of the combination. *Id.* (citing *Nguyen*, 1 S.W.3d 694). *Nguyen* cited *Barber v. State* to illustrate the point. *Id.* (citing 764 S.W.2d 232 (Tex. Crim. App. 1988)). In *Barber*, the defendants developed a scheme to steal oil. *Id.* The State established the element of "intent to establish, maintain, or participate in a combination or the profits of a combination" by putting on evidence of several acts – for example, hiring drivers to transport the oil and making agreements for the sale of the oil – which in the context of a legitimate

13

business would not constitute evidence of a crime. *Id*. Such acts were found sufficient to demonstrate the intent to do more than agree to commit one crime. *Id*.

## Argument

When viewed in the light most favorable to the verdict, there was legally sufficient evidence of each required element of the charge of Engaging in Organized Criminal Activity. In his first issue, Appellant attempts to show there was not an agreement among three or more persons by focusing on McMain's testimony that once she provided the account number to Appellant and Hargrove, she told them to "get off [her] back and leave [her] out of it." Brief for Appellant at 8; *but see* RR vol. 3 at 72 (where McMain claims she cooperated after they told her she was "not going to get in any trouble," and states she chose HPS Concrete because "it held a lot of money in there"), 73.[4]

Appellant does not acknowledge that the jury was entitled to accept some parts of her testimony and reject other parts, especially in light of the fact that McMain admitted pleading guilty to Engaging in Organized Criminal Activity for her conduct related to Hargrove, Appellant, and the forgeries. RR vol. 3 at 73; *see*

---

[4] In his statement of facts, Appellant mentions that McMain testified she said nothing about being involved with Appellant in her written statement to a Texas Ranger. Brief for Appellant at 4. On the stand, McMain explained that the investigator never asked her about Appellant. RR vol. 3 at 75. On redirect, McMain testified to Appellant's being involved. *Id*. at 76; *see also id*. at 73 (where McMain spoke of her plea of guilty to the Engaging charge involving Hargrove and Appellant).

14

*also Margraves*, 34 S.W.3d at 919. Additionally, contrary to McMain's testimony, she stayed at Appellant's girlfriend's home with Hargrove and Appellant on the night of October 7th – over a week after the first forgery, and the night before Hargrove and Appellant made a second check there and passed it at the bank. RR vol. 3 at 63. Because McMain provided the account number with access to "a lot of money" for forging the checks, was still with the group on October 7th and pled guilty to the Engaging charge, the jury could reasonably conclude McMain possessed the intent to work with the group in a continuing course of criminal activities.

There is likewise legally sufficient evidence to support the continuity element. McMain testified that Appellant and Hargrove wanted the account number so they could "make **checks**," plural. *Id*. at 72, 76 (emphasis added). With the account number provided by McMain, Appellant and Hargrove made and passed multiple checks using a computer, printer, stolen driver's license and different vehicles. *Id*. at 42, 55, 64, 69, 84, 86. During his arrest, Appellant noted the computer in the backseat of his Ford Explorer was what Hargrove "prints all" his checks on. State's Exhibit 9 at 11:51:55.

The commission of multiple offenses more than a week apart constituted strong circumstantial evidence of an intention to work together in a continuing course of criminal activities. As discussed *supra* (at 8-12) the jury had legally

15

sufficient evidence to support its finding of Appellant's guilt of Forgery on September 28, 2009, as alleged in Count I of the indictment.[5] Over a week after Appellant and Hargrove obtained around $8,000 from their September 28th forgery, the group committed two more forgeries by making and passing another check on October 8th, 2009. *Supra*; *see also* RR vol. 3 at 16-17.

Although Appellant cites *Ross v. State* for the proposition that the commission of more than one offense might not be sufficient to support the continuity element, the facts of that case are readily distinguishable. Brief for Appellant at 8; *see also* 9 S.W.3d 878, 882 (Tex. App.—Austin 2000, pet. ref'd). Unlike Appellant's case, *Ross* involved a *single criminal episode* in which the defendant and his friends were harassing a woman who had inadvertently cut him off in traffic. *Id*. *Ross* found the offenses committed in a single criminal episode while driving down I-35 could not support the continuity element: "[t]hat they ended up committing a series of offenses as the harassment unfolded does not alter their apparent intent to commit just one assault." *Id*. Notably, the Court in *Ross* also observed that:

---

[5] Although Appellant states he was acquitted of "the underlying felony charge for the Engaging in Organized Criminal Activity charge" (Brief for Appellant at 7), neither the indictment nor the charge limited the State's underlying 'forgery' charge to the September 28, 2009 Forgery by *Making*. CR at 9, 108-10. The charge also explained that the State was not bound by the specific date in the indictment. CR at 109; *see also Jimenez v. State*, 804 S.W.2d 334, 337 (Tex. App.— San Antonio 1991, pet. ref'd) (where the State uses 'on or about' language, "conviction may be had upon proof that the offense was committed any time prior to filing the charging instrument that is within the period of limitation.").

16

[a] case-specific inquiry is required to determine whether a series of offenses committed by the same group indicates that a combination existed. In appropriate circumstances, the commission by the same group of more than one criminal act can, by itself, give rise to a reasonable inference of an intent to engage in a continuing course of criminal activities. *If, for example, several people join together to commit a burglary one night, then commit another burglary a week later, an inference of continuity might be raised*.

*Id*. (emphasis added). The hypothetical envisioned in *Ross* is virtually identical to the facts of Appellant's case. As outlined above, Appellant, McMain and Hargrove worked together to commit a forgery on September 28, 2009, and another forgery a little more than a week later, on October 8, 2009.

There were ample facts from which the jury could conclude there was an agreement among Appellant, McMain and Hargrove to "establish, maintain or participate in a combination or in the profits of a combination." Additionally, because the facts in Appellant's case so closely parallel those *Ross* suggested would support a reasonable inference of intent to work together in a continuing course of criminal activities, it cannot be said that "**no** rational factfinder could have found each essential element of the charged offense beyond a reasonable doubt." *See Kiffe*, 361 S.W.3d at 107 (emphasis added). Accordingly, the Court should defer to the jury's verdict on this issue.

## Appellant Has Not Preserved Error Related to the Admission of Evidence

### Summary of the Argument

Appellant's third point alleges that "it was error" for certain evidence to be included in an exhibit in spite of a motion in limine, and that the trial court erred in failing to instruct the jury to disregard the evidence. Appellant's motion in limine did not preserve error. Appellant made no timely and specific objection when the evidence was offered, and further affirmatively waived any error by stating "[n]o objection." Alternatively, the Court included an instruction in the charge to disregard the evidence; after examining the record as a whole, there is a fair assurance any error did not affect Appellant's substantial rights.

### Argument

Appellant's third point of error complains of the admission of evidence of extraneous offenses and the Court's refusal to give a subsequent instruction to the jury to disregard the evidence. However, Appellant's motion in limine did not preserve error. "It is axiomatic that motions in limine do not preserve error." *Webb v. State*, 760 S.W.2d 263, 265 (Tex. Crim. App. 1988). "For error to be preserved with regard to the subject matter of the motion in limine it is absolutely necessary that an objection be made at the time when the subject is raised during trial."

*Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985); *see also Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd) (where appellant only objected to the violation of the motion in limine – and not to the admission of the evidence – no error was preserved for appeal). In the present case, Appellant did not object to the admission of State's Exhibit 9. RR vol. 3 at 80-81; *see also* Tex. R. App. P. 33.1.

Appellant cites *Scruggs v. State* for the proposition that a violation of a Court's ruling on a motion in limine can sometimes result in error justifying reversal. Brief for Appellant at 17. However, *Scruggs* involved a prosecutor repeatedly emphasizing inadmissible breath tests in her direct and cross examinations of witnesses. *Scruggs v. State*, 782 S.W.2d 499, 502 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). After the defendant had objected and the trial court thoroughly rebuked and explicitly ordered the prosecutor not to raise the issue, she once again intentionally attempted to elicit the inadmissible evidence during her cross examination of the defendant. *Id*. The defendant again timely objected and moved for a mistrial. *Id*. at 501. By contrast, in Appellant's case, the complained-of evidence was briefly mentioned by Appellant in an 11-minute video interview during Appellant's arrest. *See* State's Exhibit 9 at 11:57:40. There was no objection either before or promptly after State's Exhibit 9 was admitted. RR vol. 3 at 81; *see also id*. at 107 (where extraneous evidence is next discussed

19

outside the presence of the jury). After State's Exhibit 9 was admitted, the State was not cautioned by the Court, nor did the State attempt to elicit or mention the information again in front of the jury. *See also id.* at 107 (where the State agreed to an instruction in the charge which prohibited the jury from considering the extraneous offenses mentioned in State's Exhibit 9). In the absence of apparent, intentional and repeated attempts to bring up that particular information, and absent any objections by Appellant, *Scruggs* is inapposite. *See* 782 S.W.2d at 502.

Furthermore, when the State offered the complained-of video into evidence, Appellant affirmatively stated "[n]o objection." RR vol. 3 at 81. "When the defendant affirmatively asserts during trial that he has no objection to the complained-of evidence, he waives any error in the admission of the evidence." *Klapesky v. State*, 256 S.W.3d 442, 449 (Tex. App.—Austin 2008, pet. ref'd) (citing *Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992). Even if Appellant had preserved error with his motion in limine, when he affirmatively stated he had "[n]o objection" to the complained-of evidence, he waived any error in its admission. The Court should find Appellant has failed to preserve any error related to the admission of evidence of his prior convictions.

In the alternative, even if error was preserved in the absence of any objection – and in fact, after Appellant affirmatively stated "[n]o objection" – the erroneous admission of extraneous offense evidence is nonconstitutional error. *Johnson v.*

20

*State*, 84 S.W.3d 726, 729 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). Such error should be disregarded unless it affected Appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict." *Rucker v. State*, 13-12-00657-CR, 2013 WL 6730172, at *4 (Tex. App.—Corpus Christi Dec. 19, 2013, pet. ref'd) (mem. op., not designated for publication) (citing *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007)). Substantial rights are not affected if, "after examining the record as a whole, the court has fair assurance that the error did not influence the jury, or had but a slight effect." *Id*. (citing *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)).

In Appellant's case, the extraneous offenses were mentioned only briefly by Appellant during the 11-minute interview. *See* State's Exhibit 9 at 11:57:40. Furthermore, though the Appellant mentioned his prior offenses of Possession of a Controlled Substance and Robbery, the offenses were not inflammatory. The only details of the underlying conduct for the Robbery charge were those given in Appellant's minimizing explanation of the offense, in which he claimed it was a misunderstanding over $10 he retrieved when a gas station attendant would not turn on his gas pump. *Id*.

Additionally, the trial court included an express instruction in its charge to the jury that it was not to consider the extraneous offenses in State's Exhibit 9 for

21

any purpose. CR at 101 ("Further, regarding the testimony concerning the [Appellant's] conviction for any act or acts not charged in this indictment, referred to in State's Exhibit 9, shall not be considered by you for any purpose."). From its position at trial, having viewed all of the evidence, the trial court clearly thought such an instruction was sufficient to protect Appellant's substantial rights. *See* RR vol. 3 at 108 ("I think this language will be sufficient"), 110 (trial court refers to the efficacy of the charge instruction in denying a Appellant's untimely request – outside of the presence of the jury – for a verbal instruction and a mistrial); *see also Harnett*, 38 S.W.3d at 655 ("[A]ppellant accepted the trial court's offer to instruct the jury to disregard the testimony. Normally, such an instruction cures any error or renders it harmless.") (citing *Richards v. State*, 912 S.W.2d 374, 378 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd)).

The substance of the testimony related to the extraneous offenses was not inflammatory and the explicit instruction in the charge prevented any substantial injurious effect or influence on the jury's verdict. *See Rucker*, 2013 WL 6730172 at *5 (where the Court presumed the jury followed the trial court's instructions, and any error in the admission of evidence did not affect that defendant's substantial rights). In light of the overwhelming evidence of Appellant's guilt, discussed *supra* (at 8-17), when the record is viewed as a whole, the Court has a fair assurance that the error did not influence the jury or had but a slight effect. *See*

22

*Motilla,* 78 S.W.3d at 355. Therefore, even if it finds Appellant preserved error in the admission of evidence for appeal, this Court should affirm the judgment of the trial court in Appellant's case.

## Prayer

Wherefore, premises considered, Appellee respectfully prays that this Honorable Court of Appeals affirm in all matters the judgment of the trial court in this case.

JENNIFER THARP
Criminal District Attorney

By

/s/ Joshua D. Presley
**Joshua D. Presley**
SBN: 24088254
Assistant District Attorney
150 N. Seguin Avenue, Ste. #307
New Braunfels, Texas 78130
(830) 221-1300
Fax (830) 608-2008
E-mail: preslj@co.comal.tx.us
Attorney for the State

24

## Certificate of Service

I, Joshua D. Presley, attorney for the State of Texas, Appellee, hereby certify that a true and correct copy of this Brief for the State has been delivered to Appellant STEWART LINDSAY SHERROD's attorney of record in this matter:

Paul A. Finley
401 Main Plaza, Suite 200
New Braunfels, Texas 78130
Telephone: (830) 625-8026
Facsimile: (830) 625-4433
Email: pfinley@reaganburrus.com
Attorney for Appellant on Appeal

By electronically sending it through efile.txcourts.gov e-filing, this 26th day of January, 2015.

/s/ Joshua D. Presley
**Joshua D. Presley**

## Certificate of Compliance

I hereby certify, pursuant to Rule 9.4(i)(2)(B) and Rule 9.4(i)(3) of the Texas Rules of Appellate procedure that the instant brief is computer-generated using Microsoft Word and said computer program has identified that there are 5,694 words within the portions of this brief required to be counted by Rule 9.4(i)(1) & (2) of the Texas Rules of Appellate Procedure.

The document was prepared in proportionally-spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

/s/ Joshua D. Presley
**Joshua D. Presley**